[Civ. No. 1634. Second Appellate District.—February 16, 1915.]

GEORGE W. SMITH, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

INDUSTRIAL ACCIDENT COMMISSION—REVIEW OF DECISION BY COURTS—
SCOPE OF.—No appeal is provided to be taken from a decision of the industrial accident commission, but it is provided in section 84 of the act creating the commission (Stats. 1913, p. 318), that a proceeding of review may be taken in either the supreme court or the district courts of appeal, which review may extend far enough to determine whether the findings of fact, when such are made, support the order, decision, or award under review.

ID.—FINDINGS OF FACT—WHEN CONCLUSIVE.—The correctness of the findings of fact of the commission cannot be questioned where there has been presented to the commission any evidence to support them. The phrase "such questions of fact shall include ultimate facts and the findings and conclusions of the commission," as used in the act, relate wholly to conclusions of fact.

ID.—CHARACTER OF COMMISSION—JUDICIAL FUNCTIONS—FINDINGS.—
The industrial accident commission exercises judicial functions; it sits as a court to try the questions pertinent to the issues within its jurisdiction; and, therefore, its findings should conform to and be judged by the same general rules as applicable to findings made in courts of justice.

Id.—Form of Findings.—It is the rule that findings of ultimate facts alone are not only sufficient, but are the most proper to be made; and while findings of evidentiary facts are permissible, these will always be controlled by findings of ultimate facts where a conflict is presented between the two.

Id.—Employers' Liability—Interstate Commerce—Power of Congress.—The United States Congress is given power by the constitution to regulate commerce among the several states; and as Congress by the Employer's Liability Act passed in April, 1908, (U. S. Comp. Stats. Supp. 1909, p. 1171), took possession of the field of the employers' liability in interstate transportation, all state laws upon the subject were thereby superseded; and the state industrial accident commission is without jurisdiction to award compensation to an employee engaged in work directly relating to interstate commerce.

Id.—Injury to Railroad Special Officer—Act Affecting Interstate Commerce—Lack of Jurisdiction of State Commission.—A railroad watchman who is accidentally injured by the discharge of his revolver while in the act of pursuing certain trespassers and in driving them from the company's property after he had boarded an interstate train and driven them off, is engaged in an act affecting interstate commerce and not in an act local in its relation to the business of his employer, and therefore the state industrial accident commission has no jurisdiction to entertain his application for compensation for the injury.

APPLICATION for a Writ of Review originally made in the District Court of Appeal for the Second Appellate District, to review the decision of the State Industrial Accident Commission on an application of an employee of a railroad company for compensation for injuries accidentally received by him.

The facts are stated in the opinion of the court.

George H. Johnson, and Johnson & Phipps, for Petitioner.

Christopher M. Bradley, and H. C. Booth, for Respondent.

JAMES, J.—Proceedings in *certiorari* to review the findings and determination of the state industrial accident commission whereby petitioner, who applied for compensation against the Southern Pacific Company under the provisions of the Workmen's Compensation Act of California, was denied relief and his application dismissed.

26 Cal. App.—36

Petitioner was a special officer or watchman employed by the Southern Pacific Company at its railroad yards in Colton, California. On the night of January 13, 1914, a through passenger train running from New Orleans to San Francisco, and carrying passengers, baggage, and express from points without the state destined for points within California, came into the yards. Acting within the line of his duty, petitioner boarded the tender of the locomotive attached to the train, as it got under way again, for the purpose of preventing trespassers from getting on the cars. As the train moved out three men attempted to board the ''blind baggage,'' that being the car nearest the engine and having no door leading from the platform to the interior of the train. Petitioner shouted at the men and they jumped from the platform and petitioner left the engine tender and alighted on the ground. He started to pursue the three men in order to drive them from the company's property, and while doing this his revolver fell from its holster and a cartridge therein exploded, the bullet striking petitioner's left thigh where it inflicted a flesh wound. For this accidental injury suffered while he was performing a service in the course of his employment petitioner claimed compensation.

The industrial commission made findings of fact, the substance of which has been narrated in the foregoing. A dismissal of petitioner's application was ordered because it appeared, in the opinion of the commission, that the employment in which the watchman was engaged at the moment of the accident had to do with interstate commerce, and therefore his claim for compensation did not fall within the jurisdiction of the state board.

Petitioner challenges these findings and contends that he was not engaged in an employment connected with interstate commerce at the time he received his injury, and that, irrespective of that issue being found against him, his claim was one which it was within the jurisdiction of the state commission to allow.

Before giving attention to the principal questions thus presented, some notice should be taken of the proposition suggested as to how far in this proceeding a review may be had of the findings of the state industrial board. No appeal is provided to be taken from a decision of the commission, but it is provided in section 84 of the act (Stats. 1913, p. 318),

that a proceeding of review may be taken in either the supreme court or the district courts of appeal. It is provided that this review may extend far enough to determine whether the findings of fact, when such are made, "support the order, decision, or award under review." In the subdivision immediately following is contained this provison: "The findings and conclusions of the commission on questions of fact shall be conclusive· and final and shall not be subject to review; such questions of fact shall include ultimate facts and the findings and conclusions of the commission." Some ambiguity is apparent in these provisions, but they can be given a reasonable interpretation which will make effectual the evident intent of the legislators. We apply this construction: The correctness of the findings of fact cannot be questioned where there has been .presented to the commission any evidence to support them.· The phrase, *"such questions of fact* shall include ultimate facts and the findings and conclusions of the commission," must relate wholly to conclusions of fact, for the clause expressly so declares in the part we have underscored. Ultimate facts are nothing more than conclusions of fact drawn from the probative or evidentiary facts; hence matters of fact stated in their ultimate form cannot differ from conclusions of fact, however characterized. The industrial accident commission exercises judicial functions; it sits as a court to try the matters pertinent to issues within its jurisdiction. There is every reason for saying, therefore, that its findings should conform to and be judged by the same general rules as are applicable to findings made in courts of justice. It is a rule that findings of the ultimate facts alone are not only sufficient, but are the most proper to be made; and while findings of evidentiary facts are permissible, these will always be controlled by findings of the ultimate facts where a conflict is presented between the two. (*Corea* v. *Higuera,* 153 Cal. 451, [17 L. R. A. (N. S.) 1018, 95 Pac. 882]; *People* v. *McCue,* 150 Cal. 195, [88 Pac. 899].) The commission in the matter of this petitioner's application, after finding the facts as to his employment and those relating to the circumstances of the accident, added a finding to this effect: "That the applicant, George W. Smith, was at the specific time of his injury employed in interstate commerce, and the particular service being rendered by him at the time of his injury was a service in such

interstate commerce." This finding, while in its analysis it may be said to cover a mixed question of law and fact, furnishes in the circumstances of this case more particularly a conclusion of law which was not necessary to be made. No doubt it was expressed more by way of pointing directly to the reasons for the opinion of the commissioners that there was no jurisdiction in the state to adjust the claim of petitioner. That conclusion then may be disregarded, as it is plainly the intent of the statute to allow a review of all questions of law arising upon the findings of fact.

We revert again to the two main propositions, to wit: 1. Was the state industrial accident commission without jurisdiction to award petitioner compensation, assuming that the applicant was at the time of his injury engaged in work directly relating to interstate commerce? 2. Do the findings sufficiently show that, as a matter of fact, petitioner was engaged in an act affecting interstate commerce, rather than an act local in its relation to the business of the employer?

The Congress of the United States, in April, 1908, passed what is known as the Employers' Liability Act (U. S. Comp. Stats., Supp., 1909, p. 1171, Fed. Stats. Ann. Supp. 1909, p. 584), which fixes the responsibility of every common carrier toward its employees while engaged in commerce between the several states where any such employees are injured through the negligence of the officers, agents, or other employees of the carrier. In the year 1913 the legislature of California passed a measure, known as the Workmen's Compensation Insurance and Safety Act (Stats. 1913, p. 279), which provided for compensation to be awarded to employees injured while engaged in the work of their employer (except in certain employments not pertinent here), regardless of whether the accident occurred through the negligence of the employer, or his agents, servants, or other employees. It will be seen, then, that as applied to common carriers the state act covers precisely the same field as does the national legislation with the qualification that the state act obliges the employer to compensate employees for accidental injuries sustained without negligence on the part of his agents or employees, as well as those arising through the negligence of such persons.

The United States Congress is given power by the constitution to regulate commerce among the several states. As to

the application of local or state statutes made in the exercise
of the police power affecting instrumentalities of interstate
commerce, it is said that this subject belongs to the reserve
power of the states; that is, the power may be exercised by
the states in the absence of legislation covering the same
subject by Congress. When the power of Congress, however,
is exerted in the direction of covering the matter sought to
be so regulated and is comprehensive to that end, then the
state regulation must give way before the superior law. The
principle involved is elaborately stated by Mr. Justice Van
Devanter in the leading case of *Mondou* v. *New York etc.
R. R. Co.*, 223 U. S. 1, [38 L. R. A. (N. S.) 44, 56 L. Ed. 327,
32 Sup. Ct. Rep. 169], wherein the writer of that decision
quotes the words of Chief Justice Marshall in *McCulloch* v.
*Maryland*, 4 Wheat. 316, [4 L. Ed. 579], as follows: "If any
one proposition could command the universal assent of man-
kind, we might expect it would be this—that the government
of the Union, though limited in its powers, is supreme within
its sphere of action. This would seem to result necessarily
from its nature. It is the government of all; its powers are
delegated by all; it represents all and acts for all. Though
any one state may be willing to control its operations, no
state is willing to allow others to control them. The nation,
on those subjects on which it can act, must necessarily bind
its component parts. But this question is not left to mere
reason; the people have, in express terms, decided it, by say-
ing, 'this constitution, and the laws of the United States
which shall be made in pursuance thereof, shall be the su-
preme law of the land,' and by requiring that the members
of the state legislatures, and the officers of the executive and
judicial departments of the states, shall take the oath of
fidelity to it. The government of the United States, then,
though limited in its powers, is supreme; and its laws, when
made in pursuance of the constitution, form the supreme
law of the land, anything in the constitution or laws of any
state to the contrary notwithstanding." In *Seaboard Air
Line R. Co.* v. *Horton,* 233 U. S. 499, 501, [Ann. Cas. 1915B,
475, 58 L. Ed. 1068, 34 Sup. Ct. Rep. 638], the court says:
". . . it is settled that since Congress, by the act of 1908,
took possession of the field of the employer's liability to em-
ployees in interstate transportation by rail, all state laws
upon the subject are superseded. (And quoted from *Mondou*

v. *New York etc. R. R. Co.*, 223 U. S. 1, [38 L. R. A. (N. S.) 44, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169].) 'But, plainly . . . it was the intention of Congress to base the action upon negligence only, and to exclude responsibility of the carrier to its employees for defects and insufficiencies not attributable to negligence.' " See, also, *Taylor* v. *Taylor*, 232 U. S. 363, 58 L. Ed. 638, [34 Sup. Ct. Rep. 350]. Again in *Michigan Central R. R. Co.* v. *Vreeland,* 227 U. S. 59, [Ann. Cas. 1914C, 176, 57 L. Ed. 417, 33 Sup. Ct. Rep. 192], this expression of the United States supreme court, written by Lurton, J., occurs, referring to the same law: "By this act Congress has undertaken to cover the subject of the liability of railroad companies to their employees injured while engaged in interstate commerce. This exertion of a power which is granted in express terms must supersede all legislation over the same subject by the states. It follows that in respect of state legislation prescribing the liability of such carriers for injuries to their employees while engaged in interstate commerce, this act is paramount and exclusive." In point as to the exclusive nature of similar acts of Congress are the cases of: *Chicago, R. I. & P. R. Co.* v. *Hardwick Farmers Elev. Co.*, 226 U. S. 426, [46 L. R. A. (N. S.) 203, 57 L. Ed. 284, 33 Sup. Ct. Rep. 174]; *Chicago, B. & Q. R. Co.* v. *Miller,* 226 U. S. 513, [57 L. Ed. 323, 33 Sup. Ct. Rep. 155]; *Simpson* v. *Shepard,* 230 U. S. 352, [48 L. R. A. (N. S.) 1151, 57 L. Ed. 1511, 33 Sup. Ct. Rep. 729]; *Erie R Co.* v. *New York,* 233 U. S. 671, [52 L. R. A. (N. S.) 266, 58 L Ed. 1149, 34 Sup. Ct. Rep. 756].

The express declaration in these decisions that the federal statute has taken hold of the entire subject of the liability of a common carrier engaged in interstate business to its employees for accidental injuries suffered by the latter while performing their duties, makes it unnecessary to digest those decisions approving the operation of the state statutes where the national legislation is not of such a character as to indicate that Congress intended to cover the whole field. There are such decisions and they give expression to the general rule that a state statute enacted under the right of the reserve power, is not to be set aside or overridden by the law of Congress, unless there is an actual repugnance. But these decisions recognize the alternative condition; that such state statutes will be thus overridden where Congress has mani-

fested a purpose to exercise its paramount authority over the subject. There may be cited: *Sinnot* v. *Davenport,* 22 How. 226, [16 L. Ed. 243]; *Missouri, K. & T. Ry. Co.* v. *Harris,* 234 U. S. 412, [58 L. Ed. 1377, 34 Sup. Ct. Rep. 790]; *Smith* v. *Alabama,* 124 U. S. 465, [31 L. Ed. 508, 8 Sup. Ct. Rep. 564], (also cited in *Atlantic Coast R. R. Co.* v. *Georgia,* 234 U. S. 280, [58 L. Ed. 1312, 34 Sup. Ct. Rep. 829]).

Touching the claim of petitioner that, whatever character his act may have had as being connected with the operation of an interstate train up to the moment that he had driven the intruders therefrom and had himself alighted on the ground, his further act in attempting to drive the men away was one not connected with the first duty and was of a local nature only: It appears that the act was a continuous one without a break or stop. The watchman caused the men who sought to trespass on the interstate train to leave it and then, in the words of the finding made by the commission, he "was following them to drive them off the company's property when he stumbled and his revolver fell from the holster and was discharged." It would be to mark a very fine line of distinction to say that from the moment the watchman and the intruders stepped from the interstate train the acts of the former changed from being in aid of interstate commerce and his further motions in pursuit of these same intruders became colored with conditions of a purely local employment. The federal courts have not indulged such close distinctions in applying the statutes. The facts of one case may be referred to: A fireman at Selma, N. C., had prepared an engine which he was to accompany on an intrastate trip, but which was to pull in part cars brought in by an interstate train. The time not having arrived for the departure of the train, the fireman left the engine and went to his boarding-house on personal business. While crossing over the tracks of the company he was struck by an engine and killed. The federal court held that the fireman was at the time of his death engaged in work connected with interstate commerce, saying: "Assuming that the evidence fairly tended to indicate the boarding-house as his (the fireman's) destination, it nevertheless also appears that deceased was shortly to depart upon his run, having just prepared his engine for the purpose, and that he had not

gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding-house was at all out of the ordinary, or was inconsistent with his duty to his employer." (*North Carolina R. R. Co.* v. *Zachary*, 232 U. S. 248, [Ann. Cas. 1914C, 159], 58 L. Ed. 591, 34 Sup. Ct. Rep. 305].)

So here, the findings support the view that the petitioner, when he started to drive the trespassers from the company's property, was performing an act consistent with his entire duty of ridding the interstate train of persons who sought to intrude thereon without leave or right.

The conclusions herein expressed on the several contentions advanced by petitioner are, therefore, favorable to the determination as made by the industrial accident commission, which declined jurisdiction of petitioner's application and dismissed his claim.

The proceeding and order brought under review are affirmed.

Conrey, P. J., and Shaw, J., concurred.