[S. F. No. 8803.  In Bank.—September 30, 1918.]

## SOUTHERN PACIFIC COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

WORKMEN'S COMPENSATION ACT — DEATH OF CAR REPAIRER — EMPLOYMENT IN INTERSTATE COMMERCE.—An employee of a railroad company whose general employment was to repair cars containing both interstate and intrastate freight in the yards of the company, and whose duties required him to pass from one car to another and one track to another seeking out the cars which were tagged by the inspectors as requiring light repairs, was engaged in interstate, as distinguished from intrastate, commerce, and the liability of the company for injuries received by him resulting in his death determined by the courts in accordance with the provisions of the Federal Employers' Liability Act, where at the time of the accident he and his assistant had released the air on a string of cars containing both interstate and intrastate freight, and were proceeding across the yard for the purpose of making light repairs upon other cars tagged for repairs.

ID.—TEST OF EMPLOYMENT.—Whether or not deceased was engaged in interstate commerce depends upon whether the series of acts that he had last performed was properly to be regarded as a succession of separate tasks or as a single and indivisible task.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission. Award annulled.

The facts are stated in the opinion of the court.

Henley C. Booth, for Petitioner.

Christopher M. Bradley, and Frank J. Creede, for Respondents.

WILBUR, J.—The petitioner seeks to review an award of the respondent, Industrial Accident Commission, in favor of the widow and children of James Morton, deceased, made under the terms of the Workmen's Compensation Act of California (Stats. 1913, p. 279). The only question here involved is whether or not the respondent has jurisdiction to make an award or whether the liability of the petitioner is to be determined by the courts in accordance with the provisions of the Federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65, [U. S. Comp. Stats. 1916, secs. 8657–8665; 8 Fed Stats. Ann. 2d ed., p. 1208]). This depends upon whether the deceased when killed was engaged in interstate commerce.

The deceased was a member of the repair gang employed by petitioner to make light repairs upon cars side-tracked and detained upon side-tracks reserved respectively for inbound or outbound freight traffic in the Bay Shore Freight Yards of petitioner. Such detention on said tracks was in part for the purpose of inspecting the cars to ascertain defects therein and to make such light repairs thereof as were thereby found necessary, in order that the cars might proceed to their destination. "Light repairs" were made upon the cars without moving them from their positions in the "cuts" or "drags" on the side-tracks, but "heavy repairs" were made by cutting out said cars and transferring them to tracks specially devoted to repair work. About forty per cent of the business of the yard at that time was interstate business, the balance intrastate.

The tracks upon which the cars repaired by the deceased and his fellow laborers were standing were part of the switching tracks in the freight-yards essential to the movement of interstate as well as the intrastate commerce. The system of light repairs inaugurated in the yards in question was for

the purpose of facilitating the movement of trains to and from the yard and was distinct from the heavy repair jobs which required the cars to be cut out of the "cuts" or "drags" and placed on special side-tracks arranged for such repair work. During the day the light repair men doing "light repairs" would repair on an average one hundred cars. Decedent's duties required him to pass from one car to another and one track to another seeking out the cars which were tagged by the inspectors as requiring light repairs and finding them to make such repairs. Decedent and his assistant had released the air on a string of cars, some containing interstate and others intrastate freight, and were proceeding across the yard for the purpose of making light repairs upon other cars. While the deceased was crossing one of the switches he was killed by an empty freight-car being suddenly moved upon him because struck by another car "kicked" upon the track by a switch-engine. It is not known whether the next car to be repaired by deceased would be loaded with interstate or intrastate commerce, as that would depend entirely upon which sort of a car they happened to first discover tagged for light repairs.

Whether or not deceased was engaged in interstate commerce "depends upon whether the series of acts that he had last performed was properly to be regarded as a succession of separate tasks or as a single and indivisible task," as was said by the supreme court of the United States in *Erie R. R. Co.* v. *Welsh*, 242 U. S. 303, [61 L. Ed. 319, 37 Sup. Ct. Rep. 116], in passing upon the case of a yard conductor injured while going to report to the yard-master for further orders. "The true test," it is there held, "is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act." The deceased and his assistant would work on twenty-five cars daily, and in so doing move from place to place in the yards. Some cars repaired were filled with interstate and others with intrastate freight. The character of employment in which decedent was engaged seems to approach more nearly to that of a switch engineer, as a "single and indivisible task," than to that of a "heavy repair" man, whose work might be properly characterized as a "succession of separate tasks." Such an engineer was killed while leav-

ing the carrier's yard, and it was held that he then was engaged in interstate commerce. ''In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. (See *North Carolina R. R. Co.* v. *Zachary*, 232 U. S. 248, 260, [Ann. Cas. 1914C, 159, 58 L. Ed. 591, 34 Sup. Ct. Rep. 305, 9 N. C. C. A. 109].) Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work, and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of the injury his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is for the present purpose of no importance.'' (*Erie R. R. Co.* v. *Winfield*, 244 U. S. 170, 173, [Ann. Cas. 1918C, 662, 61 L. Ed. 1057, 37 Sup. Ct. Rep. 556, 557].) By the same process of reasoning the decedent, whose general employment was to repair cars containing interstate and intrastate freight in the yards of the petitioner, was employed in interstate commerce while passing through the yard from one such car to another. In considering this question it is also proper to bear in mind the requirements of the Federal Safety Appliance Acts (Act Cong. March 2, 1893, c. 196, 27 Stat. 531; Act Cong. March 2, 1903, c. 976, 32 Stat. 943; Act Cong. April 14, 1910, c. 160, 36 Stat. 298 [U. S. Comp. Stats. 1916, secs. 8605–8615, 8617–8619, 8621–8623; 8 Fed. Stats. Ann., 2d ed., p. 1189, etc.]) in regard to the inspection and the care of cars on railways engaged in interstate commerce. The inspection and repair service of the deceased was required by such statute, and was therefore made an essential part of the movement of interstate commerce, and the decedent was engaged in performing this work upon cars brought to a standstill partly for that purpose.

We conclude, therefore, that the deceased was engaged in interstate commerce when killed.

The award of the commission is annulled.

Melvin, J., Shaw, J., Sloss, J., Richards, J., *pro tem.*, Lorigan, J., and Angellotti, C. J., concurred.