[S. F. No. 9347. In Bank.—October 4, 1920.]

WALKER D. HINES, Director-General of Railroads, etc., Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—DEATH OF RAILROAD EMPLOYEE— FINDING AS TO CHARACTER OF SERVICE — CONCLUSION OF LAW — JURISDICTION.—In a proceeding for compensation for the death of an employee killed while making repairs upon a switch engine which when in service was used in both interstate and intrastate traffic, a finding that during the time the engine was withdrawn from service for repairs it was not engaged in any service and that the deceased was therefore not engaged in interstate commerce at such time, must be regarded as a conclusion of law and as presenting the question of the jurisdiction of the commission to make the award, which question may be considered on *certiorari*.

[2] ID.—INJURY TO EMPLOYEE ENGAGED IN INTERSTATE COMMERCE— JURISDICTION.—Where an employee is injured while engaged in work directly relating to interstate commerce, the commission has no jurisdiction to award compensation for such injury, since the Federal Employers' Liability Act is the exclusive remedy.

[3] ID.—CHARACTER OF EMPLOYMENT — GENERAL TEST.—The general test as to the character of the employment is whether the employee

---

1. Application of state compensation statutes to non-negligent injuries of employees while engaged in interstate commerce, note, L. R. A. 1918C, 450.

Right and extent of review of findings of commission, notes, L. R. A. 1916A, 163, 266; L. R. A. 1917D, 186.

2. Employees entitled to protection under federal act, notes, Ann. Cas. 1914C, 164; Ann. Cas. 1915D, 319; Ann. Cas. 1916D, 232; Ann. Cas. 1916E, 472; Ann. Cas. 1918B, 55, 70.

CLXXXIV Cal.—1          (1)

was engaged in an act so directly and immediately connected with interstate business as substantially to form a part or necessary incident thereof.

[4] ID.—DEATH OF RAILROAD MACHINIST'S HELPER—REPAIR OF SWITCH ENGINE TEMPORARILY WITHDRAWN FROM SERVICE—EMPLOYEE NOT ENGAGED IN INTERSTATE COMMERCE.—A machinist's helper employed by a railroad company, who was killed while making repairs on a switch engine temporarily withdrawn from service in both interstate and intrastate commerce, was not engaged in interstate commerce, and the Industrial Accident Commission had jurisdiction to award compensation for his death, since the engine had not been operated exclusively in interstate commerce, and the work which he was performing did not have the immediate effect of furthering interstate traffic, and the instrumentality upon which he was laboring was not a car loaded with commodities consigned to or from other states.

[5] ID.—CONSTRUCTION OF FEDERAL LIABILITY ACT—DECLARATIONS OF SUPREME COURT OF UNITED STATES.—Declarations of the Supreme Court of the United States in the construction of the Federal Employers' Liability Act must be accepted as the settled law on the point involved.

PROCEEDINGS on Certiorari to review an order of the Industrial Accident Commission. Affirmed.

The facts are stated in the opinion of the court.

Henley C. Booth for Petitioner.

O'Gara & De Martini and A. E. Graupner for Respondents.

LAWLOR, J.—This is a writ of review issued upon the application of the petitioner, Walker D. Hines, as Director-general of Railroads, United States Railroad Administration (Southern Pacific Railroad). On November 28, 1919, the respondent Industrial Accident Commission made an award against petitioner in the respective sums of $2,529.38 in favor of respondent Fernanda Brizzolara and $2,429.38 in favor of respondents Bartolomeo and Angelo Brizzolara, the last-mentioned amount to be paid to respondent Maybelle Brizzolara, as trustee for said Bartolomeo and Angelo Brizzolara. The award was made as compensation for the death of Angelo Brizzolara, an employee of William G. McAdoo, petitioner's predecessor in the office of Director-general of Railroads.

As stated in petitioner's brief, "the following findings of fact made by the commission . . . are fully sustained by the evidence:

" '1. That Angelo Brizzolara, hereinafter called the employee, was injured on the ninth day of June, 1918, at San Francisco, . . . while in the employment of the United States Railroad Administration, William G. McAdoo, Director-general, hereinafter called the employer, as a machinist's helper, and that said injury proximately caused the death of the employee on the same day.

" '2. That at the time of said injury and death said employee was engaged in making repairs upon a switch engine, which had been temporarily withdrawn from service therefor. That when in service, said switch engine was used in both interstate and intrastate traffic. That the evidence herein is insufficient to establish as a fact that the proportion of said interstate use exceeded or amounted to thirty per cent of the whole. . . .

" '3. That said injury arose out of and in the course of such employment, was proximately caused thereby, and occurred while the employee was performing service growing out of and incidental to the same, and happened in the following manner: While he was adjusting brakes upon a switch engine, which was used exclusively in the Mission Bay yards of the Southern Pacific Company, his head was crushed by a break-beam.' "

Petitioner applied to the commission for a rehearing, but the application was denied. Its principal contention here is "that said award . . . and denial of a rehearing were . . . in excess of the jurisdiction of said commission, . . . and in denial of a right, privilege and immunity of this petitioner under . . . the Federal Employers' Liability Act."

[1] 1. Before proceeding to a discussion of this contention, it will be proper to consider a preliminary question raised by petitioner. In addition to the findings already quoted, the commission found "that during the time said engine was withdrawn from service for repairs, said engine was not engaged in any service, interstate or otherwise. That said employee was therefore not engaged in interstate commerce at said time, and both employer and employee were subject to the jurisdiction of this commission." Peti-

tioner claims that "the last-quoted findings are in reality not findings of fact, but conclusions of law by the commission." This claim is not controverted by respondents. The commission made a similar finding in *Southern Pacific Co.* v. *Pillsbury,* 170 Cal. 782, [L. R. A. 1916E, 916, 151 Pac. 277], (hereinafter referred to as the Ruth case, because the injury for which compensation was awarded had occurred to an employee of that name), wherein the court said: "That finding is not, in strictness, a finding of pure fact, but rather is it a conclusion of law drawn from a consideration of the admitted facts, to which consideration have been applied principles of law of more or less intricacy." This language is clearly applicable to the finding under consideration, which must, therefore, be regarded as a conclusion of law and as presenting the question of the jurisdiction of the commission to make the award—a question which may be considered on *certiorari.* (*Smith* v. *Industrial Acc. Com.,* 26 Cal. App. 560, [147 Pac. 600].)

2. This brings us to consider petitioner's principal contention, which, stated in different language, is that the deceased, at the time of the injury which resulted in his death, was employed in interstate commerce, and, therefore, that any compensation for such accident must be awarded under the Federal Employers' Liability Act (U. S. Comp. Stats. 1918, secs. 8657–8665; 6 Fed. Stats. Ann., 2d ed., pp. 280–284), and not under the Workmen's Compensation Act of this state. (Stats. 1917, p. 831, c. 586.) [2] At the outset it is to be observed that, where an employee is injured while engaged in work directly relating to interstate commerce, the commission has no jurisdiction to award compensation for such injury, since the federal act already referred to is the exclusive remedy. (*Southern Pacific Co.* v. *Pillsbury, supra; Smith* v. *Industrial Acc. Com., supra; Second Employers' Liability Cases,* 223 U. S. 1, [38 L. R. A. (N. S.) 44, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169, see, also, Rose's U. S. Notes]; *Michigan Cent. R. R. Co.* v. *Vreeland,* 227 U. S. 59, [Ann. Cas. 1914C, 176, 57 L. Ed. 417, 33 Sup. Ct. Rep. 192]; *Seaboard Air Line Ry. Co.* v. *Horton,* 233 U. S. 501, [Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635]; *New York Cent. R. R. Co.* v. *Winfield,* 244 U. S. 147, [Ann. Cas. 1917D, 1139, L. R. A. 1918C, 439, 61 L. Ed. 1045, 37 Sup. Ct. Rep. 546].)

Indeed, the correctness of this rule is conceded by respondents. The sole question then becomes, upon the facts found by the commission, Was the deceased employee, at the time he received the fatal injury, engaged in work directly relating to interstate commerce?

At first glance the answer to this question would seem to be governed by the Ruth case. There, as here, at the time the employee was injured, he was engaged in repairing a switch engine which had been temporarily withdrawn from service. While in service it was used "in handling both inter and intra state commerce." It was held, after a discussion of the decisions bearing upon the federal statute involved, that the employee was engaged in interstate commerce, and the award of the commission was annulled. But since the Ruth case was decided (August 7, 1915), a number of decisions involving the construction, and the application to similar facts of the Employers' Liability Act have emanated from this, and from the supreme court of the United States, and respondents contend that, in the light of those decisions, this court must, on the facts herein, reach a conclusion opposite to that in the Ruth case. Do those authorities sustain this contention?

In *New York Cent. R. R. Co.* v. *Carr*, 238 U. S. 260, [59 L. Ed. 1298, 35 Sup. Ct. Rep. 780], the employee's injury was due to the negligence of a fellow-servant (which barred a recovery under the New York law in the event that at the time of the injury the employee was engaged in intrastate commerce). We quote from the opinion: "Carr was a brakeman on a 'pick-up' freight train running from Rochester to Lockport. . . . On November 18, 1910, some of the cars in this train contained interstate freight. Among those engaged in purely intrastate business were the two cars at the head of the train and next to the engine, which were to be left at North Tonawanda, New York. On arriving at that point they were uncoupled from the train, pulled by the engine down the track, and then backed into a siding. . . . The railroad company insists that when the two cars were cut out of the train and backed into a siding they lost their interstate character, so that Carr while working thereon was engaged in intrastate commerce. . . . The scope of the Federal Employers' Liability Act is so broad that it covers a vast field about which there can

be no discussion. But owing to the fact that, during the same day, railroad employees often and rapidly pass from one class of employment to another, the courts are constantly called upon to decide those close questions where it is difficult to define the line which divides the state from interstate business. . . . The matter is not to be decided by considering the physical position of the employee at the moment of injury. If he is hurt in the course of his employment while going to a car to perform an interstate duty, or if he is injured while preparing an engine for an interstate trip, he is entitled to the benefits of the federal act, although the accident occurred prior to the actual coupling of the engine to the interstate cars. . . . *Each case must be decided in the light of the particular facts with a view to determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or necessary incident thereof.* Under these principles the plaintiff is to be treated as having been employed in interstate commerce at the time of his injury and the judgment in his favor must be affirmed.'' (Italics ours.)

It appeared in *Delaware, L. & W. R. R. Co.* v. *Yurkonis,* 238 U. S. 439, [59 L. Ed. 1397, 35 Sup. Ct. Rep. 902], that the defendant railroad company operated a colliery wherein coal was mined for use in its locomotives and other rolling stock used in interstate commerce. The plaintiff was injured while working in defendant's employ in the colliery. Applying the rule of the Carr case, it was held that the accident did not occur in interstate commerce. (See, also, *Minneapolis & St. Louis R. R. Co.* v. *Nash,* 242 U. S. 619, [61 L. Ed. 531, 37 Sup. Ct. Rep. 239] ; *Raymond* v. *Chicago, M. & St. P. Ry. Co.,* 243 U. S. 43, [61 L. Ed. 583, 37 Sup. Ct. Rep. 268].)

In *Shanks* v. *Delaware, L. & W. R. R. Co.,* 239 U. S. 556, [L. R. A. 1916C, 797, 60 L. Ed. 436, 36 Sup. Ct. Rep. 188] (January 10, 1916), it was held that ''where a railroad company, which is engaged in both interstate and intrastate transportation, conducts a machine-shop for repairing locomotives used in such transportation, an employee is not engaged in interstate commerce while taking down and putting up fixtures in such machine-shop.'' The court said: ''Having in mind

the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion, . . . and that *the true test of employment in such commerce in the sense intended is, Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?* . . . Coming to apply the test to the case in hand, it is plain that Shanks was not employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car, or other instrument *then in use* in such transportation. . . . The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture was to communicate power to machinery used in repairing parts of engines some of which were used in such transportation." (Italics ours.) See, also, *New York Cent. R. R. Co.* v. *White,* 243 U. S. 188, [Ann. Cas. 1917D, 629, L. R. A. 1917D, 1, 61 L. Ed. 667, 37 Sup. Ct. Rep. 247].

*Chicago, B. & Q. R. R. Co.* v. *Harrington,* 241 U. S. 177, [60 L. Ed. 941, 36 Sup. Ct. Rep. 517, see, also, Rose's U. S. Notes] (May 1, 1916), was a case where the employee was killed while engaged at defendant's Kansas City terminal yards as a member of a switching crew in transporting coal from a storage track to a coal-shed, whence it was to be supplied to locomotives of all classes, engaged in interstate traffic. The court held that the federal act did not apply, and declared, quoting with approval from the Shanks case: "It is not important whether he had previously been engaged in interstate commerce, or that it was contemplated that he would be so engaged after his immediate duty had been performed. . . . Manifestly there was no . . . close or direct relation to interstate transportation in the taking of the coal to the coal chutes." Upon the authority of this case it was held in *Lehigh Valley R. R. Co.* v. *Barlow,* 244 U. S. 183, [61 L. Ed. 1070, 37 Sup. Ct. Rep. 515] (May 21, 1917), that a switchman was not engaged in interstate commerce while moving from a siding to an unloading trestle three cars of coal which had, some three weeks before, been brought from another state.

In *Louisville & N. R. R. Co.* v. *Parker*, 242 U. S. 13, [61 L. Ed. 119, 37 Sup. Ct. Rep. 4] (November 13, 1916), the court, referring to a fireman who had been killed while running a switch engine "for the purpose of reaching out and moving an interstate car," declared: "The purpose controls, and the business is interstate. The difference is marked between a mere expectation that the act done would be followed by other work of a different character, . . . and doing the act for the purpose of furthering the later work."

The injury for which compensation was sought in the Rolfe case (*Southern Pacific Co.* v. *Industrial Acc. Com.*, 174 Cal. 8, [L. R. A. 1917E, 262, 161 Pac. 1139], [December 14, 1916]), was the death of a flagman at a railroad crossing, who had been struck by a passing local train. The tracks at that point were used by both interstate and intrastate traffic. It was said: "The duties of deceased . . . had to do directly with the keeping of an instrumentality of interstate commerce in suitable condition for the use of such commerce. And exactly as in the case of one engaged in the repairing of such an instrumentality after injury thereto has occurred, who concededly is engaged in interstate commerce, it is immaterial whether or not any interstate traffic was *immediately* to be had over the same. . . . In the light of what has already been decided by that court [the supreme court of the United States], we are of the opinion that *any work having for its immediate object, in whole or in part, the keeping of the track in condition for use according to schedule for interstate traffic has such a close and direct relation to interstate transportation as to be practically a part of it,* and that such work as deceased was engaged in at the time of his death was work of this character." (Italics ours.)

In *Erie R. R. Co.* v. *Welsh*, 242 U. S. 303, [61 L. Ed. 319, 37 Sup. Ct. Rep. 116] (December 18, 1916), the employee was a yard conductor and it appeared that just previous to the accident he had been engaged in maneuvering a freight-car into position where it could be included in an interstate train; that he was injured while returning to the yardmaster's office for orders; and that the orders awaiting him there required him to proceed immediately to make up an interstate train. The court continued:

"Upon the strength of these facts it is argued that his act at the moment of his injury partook of the nature of the work that, but for the accidental interruption he would have been called upon to perform. In our opinion this view is untenable. By the terms of the Employers' Liability Act, *the true test is the nature of the work being done at the time of the injury,* and the mere expectation that the plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act." (Italics ours.) Held that the federal act did not apply.

The facts of the case and the decision reached by the court in *Minneapolis & St. Louis R. R. Co.* v. *Winters,* 242 U. S. 353, [Ann. Cas. 1918B, 54, 61 L. Ed. 358, 37 Sup. Ct. Rep. 170] (January 8, 1917), appear in the following excerpt from the opinion which we have italicized: "The plaintiff was making repairs upon an engine. This engine 'had been used in the hauling of freight trains over the defendant's line . . . which freight trains hauled both interstate and intrastate commerce, and . . . it was so used after the plaintiff's injury.' That . . . is not sufficient to bring the case under the act. *This is not like the matter of repairs upon a road permanently devoted to commerce between the states. An engine as such is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other.* Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events."

On January 29, 1917, in *Baltimore & O. R. R. Co.* v. *Branson,* 242 U. S. 623, [61 L. Ed. 534, 37 Sup. Ct. Rep. 244], the supreme court reversed the judgment of a Maryland trial court which had been affirmed by the supreme court of that state (128 Md. 678, [98 Atl. 225]). In that case the plaintiff, Branson, had suffered injury by inhaling the spray from a "paint gun" which he used in defendant's em-

ploy in painting engines and cars used in interstate commerce. He sued to recover under the Federal Employers' Liability Act. Both the trial court and the state supreme court held that he was engaged in interstate commerce and that the statute was applicable. The United States supreme court filed a memorandum opinion, reversing the judgment upon the authority of the Yurkonis, Harrington, Shanks, and Winters cases.

Subsequently, on April 30, 1917 (243 U. S. 656, [61 L. Ed. 949, 37 Sup. Ct. Rep. 481]), the supreme court, without comment, denied the petition filed by respondent commission for a writ of *certiorari* in the Rolfe case, and on May 21, 1917 (244 U. S. 653, [61 L. Ed. 1373, 37 Sup. Ct. Rep. 652]), a similar petition was denied, also without comment, in the Ruth case.

On the last-mentioned day, the decision was filed in *Erie R. R. Co.* v. *Winfield*, 244 U. S. 170, [Ann. Cas. 1918B, 662, 61 L. Ed. 1057, 37 Sup. Ct. Rep. 556]. In that case, "the employee was in charge of a switch engine in the carrier's extensive yard at Croxton, New Jersey, and was switching freight-cars about in the yard, especially to and from a transfer station. . . . In some cars the freight was interstate, in others intrastate, and in still others it was of both classes. . . . In concluding his work for that day the employee took his engine to the place where it was to remain for the night and started to leave the yard. His route lay across some of the tracks and while passing over one he was struck by an engine and received injuries from which he soon died. . . . In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. . . . Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole. . . . His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of the injury his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is for present purposes of no importance."

*Southern Pacific Co.* v. *Industrial Acc. Com.*, 178 Cal. 20, [171 Pac. 1071] (March 25, 1918), was a case where compensation was sought for the death of one Butler, caused

by electrocution while Butler was working for petitioner as an electric lineman. The opinion states that petitioner "operates a system of electric railway lines, . . . its cars being used in both intrastate and interstate commerce," and continues: "The opinion in the Shanks case refers to a number of earlier cases in which, upon varying facts, the federal statute has been held to be applicable or inapplicable. Upon examination of these decisions it will be found that each case turned upon the peculiar facts of the employment in question. It may be said, however, that *the decisive consideration is always the closeness or remoteness of the particular work, as related to interstate transportation.*" (Italics ours.) The award was affirmed on the authority of the Harrington case.

In *Southern Pacific Co.* v. *Industrial Acc. Com.,* 179 Cal. 59, [175 Pac. 453] (September 30, 1918), the employee, Morton, was a member of a repair crew in petitioner's Bay Shore Freight Yards, engaged in repairing cars, some of which carried intrastate and other interstate shipments. He was killed by an empty car while proceeding across the yard from one repair job to another. After quoting from *Erie R. R. Co.* v. *Winfield, supra,* the court said: "By the same process of reasoning the decedent, whose general employment was to repair cars containing both interstate and intrastate freight in the yards of the petitioner, was employed in interstate commerce while passing through the yard from one such car to another."

The facts in *New York Cent. R. R. Co.* v. *Porter,* 249 U. S. 168, [63 L. Ed. 536, 39 Sup. Ct. Rep. 188] (March 3, 1919), show that compensation had been awarded under the New York Workmen's Compensation Act for the death of an employee who was killed by a passenger train while shoveling snow from certain tracks which "were used for the purpose of transporting . . . both interstate and intrastate commerce." It was held that he was engaged in interstate commerce and, therefore, that the state statute was not applicable.

In *Philadelphia, B. & W. R. R. Co.* v. *Smith,* 250 U. S. 101, [63 L. Ed. 869, 39 Sup. Ct. Rep. 396] (May 19, 1919), the employee was engaged as cook in a construction crew, whose duty it was to move from one point to another repairing bridges, and who lived in "camp-car." The car was

standing upon a siding near an abutment on which the crew were working, when another train collided with it, causing the injuries from which plaintiff sought to recover under the federal act. The court affirmed the judgment rendered in his favor, saying: "The relation of plaintiff's work to the interstate commerce of his employer would seem to be rather remote. But upon a closer examination of the facts the contrary will appear. . . . The significant thing, in our opinion, is that he was employed by defendant to assist, and actually was assisting the work of the bridge carpenters by keeping their bed and board close to their place of work. . . . He was employed, as they were, in interstate commerce."

On the same day the opinion was filed in *Kinzell* v. *Chicago, M. & St. P. Ry. Co.*, 250 U. S. 130, [63 L. Ed. 893, 39 Sup. Ct. Rep. 412]. In that case the employee was a member of a repair crew which was making a "fill" for a bridge used by interstate trains. At the time of the injury the earth had been heaped up over the track and the employee was engaged in coupling a "scraper" to a train of cars in order to clear the earth from the track. The court declared: "*The doing of work which has for its immediate purpose the furthering of the conduct of interstate commerce constitutes an employment in such commerce within the meaning of the act.*" (Italics ours.)

The award in the Butler case was annulled on January 5, 1920. (*Southern Pac. Co.* v. *Industrial Acc. Com.*, 251 U. S. 259, [10 A. L. R. 1181, 64 L. Ed. 258, 40 Sup. Ct. Rep. 130].) We quote from the opinion: "Generally, when applicability of the Federal Employers' Liability Act is uncertain, *the character of the employment, in relation to commerce, may be adequately tested by inquiring whether at the time of the injury, the employee was engaged in work so closely connected with interstate transportation as practically to be a part of it.* . . . Applying the suggested test, we think these circumstances suffice to show that his [the employee's] work was directly and immediately connected with interstate transportation and an essential part of it." (Italics ours.)

On May 17, 1920, the decision was filed in *Erie R. R. Co.* v. *Collins*, 253 U. S. 77, [64 L. Ed. 790, 40 Sup. Ct. Rep. 450]. It appeared that "the plaintiff as an employee of

defendant operated a signaling tower and water-tank, . . . the tower being used for the operation of trains in interstate and intrastate commerce. The tank was used for supplying the locomotive of the trains with water, which was pumped from a close-by well into the tank by a gasoline engine which plaintiff ran. In the night-time of December 25, 1915, while plaintiff was engaged in starting the engine the gasoline suddenly exploded, burning him.'' The court continued: ''They [the cases relied upon below] all dealt with considerations dependent upon the distinctions of fact and law between interstate and intrastate commerce. A distinction, it may be said at once, is plain enough so far as the essential characteristics of the commerces are concerned, but how far instruments or personal actions are connected with either and can be assigned to either becomes in cases a matter of difficulty, and ground, it may be, of divergent judgments. . . . In *Pedersen* v. *Delaware, L. & W. R. R. Co.*, 229 U. S. 146, [Ann. Cas. 1914C, 153, 57 L. Ed. 1125, 33 Sup. Ct. Rep. 648, 3 N. C. C. A. 779, see, also, Rose's U. S. Notes], it was held that one carrying bolts to be used in repairing an interstate railroad, and who was injured by an interstate train, was entitled to invoke the Employers' Liability Act. . . . And it was said, citing cases: *'The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged.'* . . . In the Winters case the work was repairing an engine. The engine, it was said, had no definite destination. 'It simply had finished some interstate business and had not as yet begun upon any other.' As to such instrumentalities the determining principle was said to be that their character depends upon their 'employment at the time, not upon remote probabilities or accidental later events.'

''In the Puckett case an employee (car inspector) going to the relief of another employee stumbled over some large clinkers in his path while carrying a jack for raising a derailed car. It was decided that he was engaged in interstate commerce, the purpose being to open the way for interstate transportation.

''These, then, being the cases, what do they afford in the solution of the case at bar? As we have said regarding the essential character of the two commerces, the differences

between them is easily recognized and expressed, but, as we have also said, whether at a given time particular instrumentalities or employment may be assigned to one or the other may not be easy, and of this the cases are illustrative. What is there determining principle?

"In the Pedersen case it was said that the questions which naturally arise: 'Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it?' Or, as said in *Shanks* v. *Delaware, L. & W. R. R. Co., supra,* was the 'work so closely related to it [interstate commerce] as to be practically a part of it?' The answer must be in the affirmative. Plaintiff was assigned to duty in the signal tower and in the pump-house and it was discharged in both on interstate commerce as well as on intrastate commerce, and there was no interval between the commerces that separated the duty, and it comes, therefore, within the indicated test."

*Erie R. R. Co.* v. *Szary,* 253 U. S. 86, [64 L. Ed. 794, 40 Sup. Ct. Rep. 454], decided on the same day, was a case where the employee was injured while engaged in "sanding engines whose destinations were other states." It was held that he was engaged in interstate commerce.

In *Philadelphia & R. Ry. Co.* v. *Hancock,* 253 U. S. 284, [64 L. Ed. 907, 40 Sup. Ct. Rep. 512] (June 1, 1920), the employee was killed while operating a train of cars loaded with coal. While "the duties of the deceased never took him out of Pennsylvania," nevertheless the coal which he was moving at the time of his death was consigned to another state. It was held that "the coal was in the course of transportation to another state when the cars left the mine. *There was no interruption of the movement;* it always continued toward points as originally intended. *The determining circumstance is that the shipment was but a step in the transportation of the coal to* real and ultimate destinations in *another state."* (Italics ours.) The award of compensation, under the state Workmen's Compensation Act, was, therefore, annulled.

[3] From the foregoing authorities these principles are deducible: The general test as to the character of the employment is whether the employee was engaged in an act so directly and immediately connected with interstate busi-

ness as substantially to form a part or necessary incident thereof. Thus, where the instrumentality upon which he was working was operating exclusively in interstate commerce, as in the Parker and Szary cases; or where the work which he was performing at the time of the accident would have the immediate effect of furthering interstate traffic, as in the Carr, Rolfe, Butler, Porter, Smith, and Collins cases; or where the employee had not yet completed his day's work, which included both interstate and intrastate transportation, as in the Winfield case; or where the instrumentality upon which he was laboring was a car loaded with commodities consigned to or from other states, as in the Morton and Hancock cases, an action under the Federal Employers' Liability Act is the exclusive remedy. But where the employee's work was only remotely connected with interstate commerce, as in the Yurkonis, Shanks, Harrington, Barlow, and Branson cases; or where the employee had completed a task which involved interstate traffic, and had not yet commenced a new task, as in the Welsh case; or where the instrumentality upon which the employee was working was, at the time of the injury, neither engaged in nor loaded with interstate traffic, as in the Winters case, then compensation may be awarded under a state compensation act. As was said by this court in the Butler case, "the decisive consideration is always the closeness or remoteness of the particular work, as related to interstate transportation."

[4] Applying these principles to the facts herein, we think that, at the time Brizzolara received the injury which caused his death he was not engaged in interstate commerce. The engine which he was repairing was not used exclusively in such commerce. Indeed, as was said in the Winters case, "an engine as such is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined to anything more definite than such business as it might be needed for." It had been withdrawn from all traffic. To paraphrase the language of the Harrington case, it is not important whether the engine had previously been engaged in interstate commerce or that it was contemplated that it would be so engaged after this immediate duty had been performed. And this further excerpt from the opinion in the Winters case is pertinent: "Its character

as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events." We quote from *Chicago, R. I. & P. R. Co.* v. *Cronin* (Okl.), 176 Pac. 919: "We cannot agree with the plaintiff in error that this broken-down engine was in interstate commerce at the time of the accident; indeed, it was not in commerce of any kind. It was 'dead,' undergoing the repairs necessary to placing it in commerce."

It is urged by petitioner that "the denial of the petition for a writ of *certiorari* in the Ruth case should be regarded as authority and therefore the decision of this court should control in the case at bar." It seems plain that our holding in the Ruth case cannot be reconciled with that in the Winters case. It is true that a writ of *certiorari* in the former was denied some four months after the decision in the latter. Whatever the grounds may have been for the denial of the writ, we cannot, in the face of the clear and unequivocal statement of the rule in the Winters case, wholly at variance with the conclusion in the Ruth case, regard the latter as controlling here. In both cases the employee was injured while working on an engine which was customarily used in both interstate and intrastate traffic and in both cases it had been withdrawn from such service for repairs. As we said in the Ruth case: "No fixed rule for the construction of this statute has been laid down by the supreme court of the United States." **[5]** But, as we have shown, that court has since had occasion to construe the Federal Employers' Liability Act, and we must accept its declarations on the point in question as the settled law.

It follows that at the time of the accident Brizzolara was not "engaged in an act so directly and immediately connected with interstate business as substantially to form a part or necessary incident thereof."

The award is affirmed.

Olney, J., Shaw, J., Lennon, J., Sloane, J., and Angellotti, C. J., concurred.

WILBUR, J., Dissenting.—I dissent. It is conceded that the facts of this case bring it squarely within the rule laid down in *Southern Pacific Co.* v. *Pillsbury,* 170 Cal. 782, [L. R. A. 1916E, 916, 151 Pac. 277] (which will hereinafter

be referred to as the Ruth case), and that if we follow that case the award should be annulled. The Ruth case, however, is overruled by the main opinion upon the theory that the supreme court of the United States in *Minneapolis & St. Louis R. R. Co.* v. *Winters*, 242 U. S. 353, [Ann. Cas. 1918B, 54, 61 L. Ed. 358, 34 Sup. Ct. Rep. 170, see, also, Rose's U. S. Notes] (which will hereinafter be referred to as the Winters case), has determined the same matter directly contrary to the rule laid down by us in the Ruth case. This view is entertained, notwithstanding the fact that the supreme court of the United States declined to issue a writ of *certiorari* to review the decision of this court in the Ruth case, and that this action was had after the decision in the Winters case. It seems to me that there is a clear distinction between the Winters case and the Ruth case. The facts in the Winters case were stipulated. It appears therefrom that the engine "had been used in the hauling of freight trains over defendant's line, . . . which freight trains hauled both intrastate and interstate commerce, . . . it was so used after the plaintiff's injury." It will be observed that the stipulation does not cover the customary use of this engine. It had been used before and was used after the accident in hauling intrastate and interstate commerce. It was under this condition of the record that the court said: "Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended upon its employment at the time not upon remote probabilities or upon accidental later events." Of course, when an engine is laid up in a machine-shop for repairs it is not actually engaged in interstate commerce, and if its character as an instrument of commerce is to be determined by what it is doing when it is doing nothing, it follows that no engine while undergoing repairs is engaged in interstate commerce. It is clear from the opinion that no such result was intended, for it is expressly inferred that had it been "interrupted in an interstate haul to be repaired and go on" it would have been held that the engine was employed in interstate commerce, and those repairing it engaged therein. Again it is said: "This is not like the matter of repairs upon a road permanently devoted to commerce among the states."

The inference in this statement is that if the engine had been permanently devoted to interstate commerce, as is a bridge, that those in its repair would be engaged in interstate commerce. In this case we are dealing with a switch engine which, by reason of its construction and the character of its business, is permanently devoted to the handling of freight and passenger-cars in the railroad-yards in San Francisco, and which is used for both interstate and intrastate commerce. There is no time when it could be said that the engine while in actual operation was not engaged in interstate commerce. Why, then, is it any less an instrumentality of interstate commerce than a bridge in the main line of a railway which most of its time is unused and when in use is traveled indiscriminately by interstate and intrastate commerce? As pointed out in the main opinion, in *Philadelphia B. & W. R. R. Co.* v. *Smith*, 250 U. S. 101, [63 L. Ed. 869, 39 Sup. Ct. Rep. 396], the cook of a construction crew engaged in repairing a bridge upon a railroad engaged in interstate business was held to be engaged in such interstate commerce while serving as a cook. The court said: "The significant thing, in our opinion, is that he was employed by the defendant to assist, and was assisting, the work of the bridge carpenters by keeping their bed and board close to their place of work." It is further said: "Taking it to be settled by the decision of this court in *Pedersen* v. *Delaware etc. R. R. Co.*, 229 U. S. 146, 152, [Ann. Cas. 1914C, 153, 57 L. Ed. 1125, 33 Sup. Ct. Rep. 648, 3 N. C. C. A. 779, see, also, Rose's U. S. Notes], that the repair of bridges in use as instrumentalities of interstate commerce is so closely related to such commerce as to be in practice and in legal contemplation a part of it, it of course is evident that the work of the bridge carpenters in the present case was so closely related to defendant's interstate commerce as to be in effect a part of it." If we turn to the case of *Pedersen* v. *Delaware etc. R. R. Co., supra,* we will see that the repair of engines and cars and the repair of bridges and tracks are placed upon exactly the same footing. It was there said: "Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was con-

cerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. *Tracks and bridges* are as indispensable to interstate commerce by railroad as are *engines* and *cars,* and sound economic reasons unite with settled rules of law in *demanding that all of these instrumentalities be kept in repair.* The security, expedition, and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency . . . in its *cars, engines,* appliances, machinery, track, roadbed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? (Citing cases.) Of course we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such.'' (Italics ours.) In the Pedersen case the rule adopted by the supreme court of the United States applied with equal force to a bridge and an engine. In the Ruth case we made the application of the principle there stated to an engine. I think that this case was correctly decided and that the Winters case was not a departure from the rule laid down by us or the rule laid down by the supreme court of the United States in the Pedersen case, but depends upon its own peculiar facts and the narrowness of the stipulated facts. The whole point of the Winters case is that the supreme court of the United States felt itself unable to say, under the admitted facts, that the engine there involved was permanently used in,

or, if I may use the expression, dedicated to interstate commerce. Here we have an engine which, by reason of its peculiar construction, is and at all times has been as much dedicated to interstate commerce as is a bridge upon the main track of a railroad. In the Pedersen case it was assumed that engines and cars were obviously instrumentalities used in interstate commerce, and from that predicate it was argued that a bridge was equally such an instrumentality. The main opinion assumes that a bridge is such an instrumentality, but denies that an engine undergoing repairs is such an instrumentality, notwithstanding the fact that it was at all times used in interstate commerce.

I dissent for the further reason that we have expressly decided the very question involved in this case; that the principle involved is well settled and of universal application; that the only difficulty is that of applying it to the specific facts in each case; that we have already made such an application; that the supreme court of the United States has never undertaken to change or modify the general rule; that the Winters case is different in its facts, and that, so far as we can determine from the published opinions of the supreme court of the United States, they have distinctly approved our decision in the Ruth case. I think we ought not to assume that the Ruth case is reversed by reason of the holdings in the later cases of the supreme court of the United States, which merely apply the well-settled rule to the peculiar facts of each case, which are in every instance different from those in this case.

Rehearing denied.

All the Justices concurred, except Shaw, J., and Sloane, J., who were absent.