KINZELL *v.* CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF
IDAHC

No. 485.   Argued April 15, 1919.—Decided May 19, 1919.

In the progress of filling in earth to replace a railroad trestle used in
   interstate commerce, the earth as dumped attained a level higher
   than the rails on the trestle, and, to keep the track open for traffic,
   as well as to widen the embankment, the earth was spread away by
   scrapers adjusted to a car attached for the purpose to the dump
   train. *Held,* that an employee in charge of the car, and employed
   also in removing earth and stones from between the rails, was em-
   ployed in interstate commerce within the meaning of the Employers'
   Liability Act.
31 Idaho, 365, reversed.

THE case is stated in the opinion.

*Mr. James A. Wayne,* with whom *Mr. John P. Gray* and
*Mr. William D. Keeton* were on the brief, for petitioner.

*Mr. George W. Korte,* with whom *Mr. Heman H. Field*
was on the brief, for respondent.

MR. JUSTICE CLARKE delivered the opinion of the court.

This case comes into this court on writ of certiorari to
the Supreme Court of the State of Idaho and all of the
facts essential to its decision are admitted or are not con-
troverted, and are as follows:

When the accident complained of in the case occurred,
the Railway Company, respondent, was engaged in filling
with earth a wooden trestle-work bridge, 1200 feet in
length, by which its track was carried across a dry gulch

or coulee, the purpose being to continue the track upon the solid embankment when it should be completed.

It was admitted that the Railway Company was engaged in interstate commerce, and that during the progress of the filling the bridge was used for interstate trains. Pursuant to an order of court, the petitioner, an employee of the respondent, elected to rely on the Federal Employers' Liability Act of April 22, 1908, for his right to recover.

Several weeks prior to the accident to the petitioner Kinzell, the work of filling the bridge had progressed to such a stage that when earth was dumped from cars it would be heaped up beside the track higher than the tops of the ties and rails so that it became necessary to spread it by pushing it away from the track toward the edge of the fill, in order to prevent its falling back upon the rails and to widen the embankment. To thus spread the earth an appliance called in the record a "dozer," and sometimes a "bull dozer," was used. It consisted substantially of a flat car body with adjustable wings or scrapers, so designed as to remove any earth which might fall upon the rails and also to press or push that heaped up at the side of the track out to the edge of the embankment.

When a train-load of earth would arrive at the bridge the practice was to couple the "dozer" to the forward end of the cars and then they and the "dozer" would be pushed to the place at which it was desired to unload the earth. After the cars were dumped the pulling of the "dozer" back with them would scrape the earth from the tops of the rails and would push it away from the track, thus contributing to keep the track clear and to widen the embankment.

For several weeks prior to the accident complained of, Kinzell, with an assistant, had been in charge of this "dozer," using it as described, and in addition to this they were required to remove, with shovels, earth or stones which fell upon the track, so, the superintendent of the

Railway testified, as to make it safe for the operation of trains. The rails and ties had not been transferred to the embankment, but were still sustained by the bridge substructure when the accident occurred.

Kinzell was injured by what he claimed was negligence of the Company in the manner of coupling a train of cars to the "dozer" as an immediate preliminary to such an unloading and cleaning movement as we have described.

Much is made in argument of the contention that the fill in progress was not the repairing of, nor the furnishing of support to, the bridge, which, by the testimony of the engineer in charge of bridges, had about a year "of life" remaining when the accident occurred. For this reason it is contended that the principles of *Pedersen* v. *Delaware, Lackawanna & Western R. R. Co.*, 229 U. S. 146, do not apply. But in the view we take of the case this is not important.

With these facts before it, the Supreme Court of Idaho, in its judgment which we are reviewing, reversed the judgment of the lower court in Kinzell's favor, solely upon the ground that he was not employed in interstate commerce at the time he was injured, and gave this as the reason for its conclusion:

"We are of the opinion that constructing a fill to take the place of a trestle which is being used in interstate commerce is new construction, and that the fill does not become a part of the railroad until it is completed and the track is placed upon it instead of upon the trestle."

Such conclusion, of course, is not derived from any construction of the act of Congress, but rests wholly upon the interpretation which the court placed upon the undisputed facts, as we have stated them.

The Federal Employers' Liability Act provides that: .

"Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while

he is employed by such carrier in such commerce." (35 Stat. 65, c. 149.)

It being admitted that the Railway Company was engaged in interstate commerce, the only question for decision is whether the petitioner was employed in such commerce, within the meaning of the act as construed by this court.

In *Pedersen* v. *Delaware, Lackawanna & Western R. R. Co.*, 229 U. S. 146, it is stated that a guide to a decision of such a case as we have here may be found in the questions: Was the work being done independently of the interstate commerce in which the company was engaged or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned or was it in the nature of a duty resting upon the carrier? And in other cases it is said, in substance, that in such inquiries may be found the true test of employment in such commerce in the sense intended by the act. *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.*, 239 U. S. 556, 558; *New York Central R. R. Co.* v. *White*, 243 U. S. 188, 192. It is also settled that the doing of work which has for its immediate purpose the furthering of the conduct of interstate commerce constitutes an employment in such commerce within the meaning of the act. *New York Central &c. R. R. Co.* v. *Carr*, 238 U. S. 260; *Louisville & Nashville R. R. Co.* v. *Parker*, 242 U. S. 13; *Pecos & Northern Texas Ry. Co.* v. *Rosenbloom*, 240 U. S. 439; *Southern Ry. Co.* v. *Puckett*, 244 U. S. 571, 573.

It is in evidence in this case, indeed, it is obvious, that the "dozer" was not called into use until the fill had reached the level of the tops of the ties and had become of such width that the earth when dumped would pile up near the track so as to fall back upon it, if not removed, and that it was used for the double purpose of keeping the rails clear for the interstate commerce passing over them and

for pushing the material to the edge of the embankment to widen it. . When to this it is added that a part of Kinzell's duty was, with a shovel, to keep the track between the rails clear of earth and stones, which might fall upon it in the progress of the work, clearly it cannot be soundly said that when he was in the act of preparing to make the required use of the "dozer" he was acting independently of the interstate commerce in which the Railway Company was engaged, or that the performance of his duties was a matter of indifference to the conduct of that commerce. He was "employed" in keeping the interstate track, which was in daily use, clear and safe for interstate trains, or, as the superintendent of the Railway Company stated it, he was engaged with the "dozer" and shovel in making the track safe for the operation of trains and in avoiding delay to the commerce passing over it. Thus the case falls plainly within the scope of the decisions which we have cited, *supra*, and, regardless of what might have been said of the fill before, it had clearly become a part of the interstate railway when the petitioner was injured, for it had reached the stage where it required the work of men and machinery to keep the interstate tracks clear during further construction, and the work of such men was thereafter not only concerned with, it was an intimate and integral part of, the conducting of interstate transportation over the bridge.

We cannot doubt that the Supreme Court of Idaho fell into error in regarding the fill as new construction so unrelated to the conduct of interstate commerce over the bridge at the time the accident to the petitioner occurred that the work being done by him should be regarded as not related to or necessary to the safe conduct of that commerce, and the judgment of that court is, therefore, reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed.*