## FORT WORTH & D. C. RY. CO. v. GOOD-FELLOW. (No. 11368.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 6, 1926.)

**1. Commerce ⬤⟹27(8).**

Guard injured by falling in pit while protecting engines, tracks, and roundhouse, used in interstate commerce, was injured in "interstate commerce."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

**2. Master and servant ⬤⟹219(12) — Railway watchman falling in roundhouse engine pit at night held to have assumed risk.**

Guard protecting railway property, who was injured by falling in pit in dimly lighted roundhouse, *held* to have assumed risk, in view of jury's findings that he could have seen pit only partly covered by engine.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Robert Goodfellow against the Fort Worth & Denver City Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Carrigan, Montgomery, Britain, Morgan & King and Kilgore, Montgomery & Carrigan, all of Wichita Falls, and Thompson, Barwise & Wharton, of Fort Worth, for appellant.

C. C. McDonald and Davenport, Cummings & Crain, all of Wichita Falls, for appellee.

BUCK, J. Robert Goodfellow, hereinafter called appellee, sued the Fort Worth & Denver City Railway Company, hereinafter called appellant, for damages alleged to have been sustained by him as a result of personal injuries he claimed to have received from the negligence on the part of appellant. He claimed that on or about April 7, 1923, and for one year prior thereto, he was working for the appellant as captain of the guards during 1922 and the early part of 1923, to protect the property of appellant from damages by reason of a strike on the part of certain employés of the appellant company. He further alleged that on or about April 1, 1923, appellant dismissed all of the other guards and retained him to watch over and look after and protect appellant's roundhouse and property from trespassers, strikebreakers, thieves, and intruders; that while engaged in the performance of these duties, and at night, plaintiff was walking around one of the engines in the roundhouse and fell into one of the pits placed in said roundhouse and over which the engines were placed. He alleged that the defendant was negligent in insufficiently lighting the roundhouse and in having a part of the pit exposed, so that ap-pellee, in performing his duties, would likely fall therein. The evidence shows that the tracks in the roundhouse, and on which the engines were placed, all had these pits, and over these pits the engines were placed for the purpose of letting the water out of the engines, allowing them to blow off steam, removing the ashes, etc. Over each pit and through the roof of the roundhouse was a vent to carry out smoke, fumes, etc. The engines ordinarily used in the roundhouse covered the pits when placed over them. Some of the switch engines were shorter and left part of the pit exposed. When Mr. Goodfellow went into the roundhouse at the time of his injury he came into it through a side or back door, and walked around the first and second engines. As he started around the third engine, and while looking through a door or window and outside of the roundhouse at what he supposed was a trespasser, he fell into this pit. The third engine was shorter than those ordinarily used and did not cover the entire pit. He alleged that he was injured in his right hip and in his right foot, and that the injury caused intense pain and suffering, and that it was of a permanent nature.

The defendant pleaded contributory negligence and assumed risk, and that the defendant and appellee were both engaged in interstate commerce, and that the liability, if any, of appellant should be determined by the federal statutes (U. S. Comp. St. §§ 8657–8665). The following agreement is in the statement of facts:

"It is agreed between plaintiff and defendant that the engines in the roundhouse, at the time that plaintiff claims to have been injured, were engines that were engaged in interstate commerce, and the tracks and the roundhouse was used in connection with interstate commerce."

The cause was submitted to a jury on special issues, and the jury found: (1) That the defendant, its agents or employés, were guilty of negligence in failing to have the roundhouse properly lighted at the place where plaintiff fell; (2) that it was not guilty of negligence in placing the engine so that it did not cover the pit; (3) that such negligence was the proximate cause of the injuries suffered by the plaintiff, and that $1,500 would fairly and reasonably compensate the plaintiff for the injuries he received; (4) that the plaintiff was guilty of contributory negligence in continuing his work at the place after knowing that the same was not properly lighted; (5) that the plaintiff was not guilty of contributory negligence in looking outside of the building and not watching where he was stepping at the time of the injury; (6) that $500 should be charged to plaintiff's contributory negligence, and the amount of damages found in answer to is-

sue No. 3 should be diminished to the extent of $500; (6) that plaintiff's contributory negligence was not the sole proximate cause of his injury.

Upon defendant's specially requested issues the jury found:

(a) That the plaintiff's failure to keep a lookout when he started to go around the engine in question was not the sole proximate cause of his alleged injuries. · (b) That the plaintiff did not know before the accident that sometimes the engines that were in the roundhouse did not completely cover the engine pits. (c) That the roundhouse at the time and place in question was so lighted that plaintiff could have seen the engine pit in question if he had been looking for it. (d) That the plaintiff at the time and place in question could have turned on any lights in the roundhouse. (e) That plaintiff was not guilty of contributory negligence in failing to turn on said lights in the roundhouse. (f) That the roundhouse at the time and place in question was so lighted that the plaintiff could have seen the engine pit that he stepped into if he had looked for it. Other special charges and issues were requested by the defendant and refused by the court.

[1] We think that the following authorities cited by appellant show that appellee and appellant at the time of the injury were engaged in interstate commerce: P. B. & W. Ry. Co. v. Smith, 39 S. Ct. 396, 250 U. S. 101, 63 L. Ed. 869; Kinzell v. C., M. & St. P. Ry. Co., 39 S. Ct. 412, 250 U. S. 130, 63 L. Ed. 893; Johnson v. So. Pac. Ry. Co., 25 S. Ct. 158, 196 U. S. 1, 49 L. Ed. 363; Smith v. Industrial Accident Com., 147 P. 600, 26 Cal. App. 560.

[2] From the findings of the jury we have come to the conclusion that appellant's assignment, directed to the failure of the trial court to render judgment for it on such findings, presents reversible error. It appears that the finding of negligence on the part of defendant in having its roundhouse improperly lighted did not control, and that such negligence was not the proximate cause of plaintiff's injury.

In St. L. S. W. Ry. Co. v. Hynson, 109 S. W. 929, 930, 101 Tex. 543, 546, the Supreme Court said:

"The decisions of this court have established the law to be that 'the servant owes no duty of inspection. He assumes the risks of a danger of which he has actual knowledge, and of such hazards as he would have learned by the exercise of that ordinary circumspection which a prudent man would have used in the particular employment. Since, in the absence of knowledge to the contrary, he may rely upon the assumption that the master will do his duty, he is under no obligation to look out for the master's negligence; but he cannot shut his eyes to dangers that are obvious to an ordinary man, or to an experienced man if he be experienced.' Bonnet v. Galveston, H. & S. A. Ry. Co. [33 S. W. 334] 89 Tex. 76. Hynson was an experienced man in the work in which he was engaged, therefore, must be held in law to have known what he would have discovered in the exercise of 'that circumspection that a prudent man would use in the particular employment.' The danger consisted in the failure of the railroad company to block the guard rails in its yard, which was obvious to a casual observation of the guard rail, and if Hynson had looked at it he would have·seen that it was unblocked and would have known that there was danger of getting his foot caught if he walked over it. His own testimony shows that he did not think of the condition of the guard rail, nor look to see if it was blocked. His failure to exercise the diligence of thinking about his work and about the dangers that he was encountering cannot excuse him from the liability of having assumed the risk of the defect which existed in the guard rails. As stated in the quotation above, one who is engaged in, a dangerous service of this kind cannot 'shut his eyes' to those things that would be obvious to a man who is ordinarily vigilant in protecting himself from injury. It would be impossible for the railroad company to guard a man against dangers who neither thought of nor looked when he was in the presence of danger; nobody could think for Hynson except himself. We conclude that Hynson assumed the risk of injury in performing his service in this yard. If the railroad company was negligent in not blocking the guard rails, still the risk of damage was assumed by Hynson and he cannot recover on that account."

[3] Accordingly, we are of the opinion that, inasmuch as the jury found that the defendant was not guilty of negligence in placing the engine so that it did not cover the pit, and further found that the roundhouse at the time and place of the accident was so lighted that the plaintiff could have seen the engine pit in question if he had been looking for it, plaintiff assumed the risk of going around the engine at the time of the accident, and that he cannot recover for any damages sustained.

The judgment is reversed, and judgment is here rendered for appellant.