## HALLSTEIN v. PENNSYLVANIA R. CO.

Circuit Court of Appeals, Sixth Circuit.
February 8, 1929.

Nos. 5093, 5095.

Lewis D. Houck, of Cleveland, Ohio (Payer, Minshall, Karch & Kerr, of Cleveland, Ohio, on the brief), for plaintiff in error.

Norman A. Emery, of Youngstown, Ohio (Harrington, DeFord, Huxley & Smith, of Youngstown, Ohio, on the brief), for defendant in error.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge. The defendant railroad company was charged with the maintenance of a certain overhead highway bridge crossing its track in the city of Pittsburgh and known as the Herr's Island or Thirtieth Street bridge. The floor of this bridge had become in disrepair and was dangerous for public use, and plaintiff, as an employee of the defendant company, was engaged in loading plank into a railroad car to be hauled to the bridge for the repair of such floor. While so doing, plaintiff claims to have been injured by the negligence of other employees of the defendant similarly engaged. The action was brought under the Federal Employers' Liability Act (45 U. S. C. § 51 et seq.; 45 USCA § 51 et seq.), in a

district of which neither plaintiff nor defendant was a resident. Upon trial a verdict was directed for the defendant upon the ground of lack of jurisdiction; that is, that the plaintiff was not, at the time of his injury, engaged in interstate commerce. No question is raised as to the propriety of directing such verdict, the jury having been sworn, rather than simply dismissing the action for want of jurisdiction. We therefore do not notice nor pass upon this question.

The general rule unquestionably is that, for the Federal Employers' Liability Act to apply and the jurisdiction of the federal courts to thereby attach, not only must the employer be engaged in interstate commerce but the employee at the time of the injury must likewise be engaged in interstate transportation or in work so closely related to it as to be practically a part of it. Shanks v. D., L. & W. R. Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; Industrial Accident Commission of State of California v. Davis, 259 U. S. 182, 185, 42 S. Ct. 489 (66 L. Ed. 888). Where work is being done by an employee upon or directly in connection with an instrumentality which itself is being used in interstate commerce and not withdrawn therefrom, such as tracks, bridges, water tanks and pumps connected therewith, locomotives or cars embarked or immediately about to embark upon such commerce, or undergoing running repairs, etc., the employee has been held to have been engaged in interstate commerce. Among the leading decisions so holding are Pederson v. D., L. & W. R. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125; St. L., S. F. & T. Ry. v. Seale, 229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129; North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591; N. Y. Cent., etc., R. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298; Pennsylvania Co. v. Donat, 239 U. S. 50, 36 S. Ct. 4, 60 L. Ed. 139; Southern Ry. Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69; N. Y. Cent. R. R. Co. v. Porter, 249 U. S. 168, 39 S. Ct. 188, 63 L. Ed. 536; Phila., B. & W. R. R. Co. v. Smith, 250 U. S. 101, 39 S. Ct. 396, 63 L. Ed. 869; Kinzell v. C., M. & St. P. R. Co., 250 U. S. 130, 39 S. Ct. 412, 63 L. Ed. 893; Erie R. Co. v. Collins, 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790; Central R. Co. of N. J. v. Monahan, 11 F.(2d) 212 (C. C. A. 2); Clemence v. Hudson & M. R. Co., 11 F.(2d) 913 (C. C. A. 2); B. & O. R. Co. v. Kast, 299 F. 419 (C. C. A. 6).

On the other hand, where the instrumentality upon which the employee is at work or in connection with which he is engaged is not directly connected with interstate transportation, or where such instrumentality has been withdrawn from or not yet dedicated to use in such commerce, although it may last have been so used or be intended ultimately for such use, it has repeatedly been held that the work was not so closely related to interstate commerce as to be practically a part of it. Ill. Cent. R. R. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Shanks v. D., L. & W. R. R. Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; D., L. & W. R. Co. v. Yurkonis, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397; C., B. & Q. R. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; Raymond v. C., M. & St. P. R. Co., 243 U. S. 43, 37 S. Ct. 268, 61 L. Ed. 583; N. Y. Cent. R. Co. v. White, 243 U. S. 188, 33 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; Minneapolis & St. L. R. Co. v. Winters, 242 U. S. 353, 37 S. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54; Industrial Accident Commission of State of California v. Davis, 259 U. S. 182, 42 S. Ct. 489, 66 L. Ed. 888.

Applying these principles to the instant case, we are convinced that the District Court did not err in holding that the plaintiff was not engaged in interstate commerce. The lumber was not being moved for the repair of track, platform, appliance, or bridge which itself had ever been used as an instrumentality for interstate traffic movements. The Herr's Island or Thirtieth Street bridge in no way facilitated the interstate transportation except indirectly in eliminating a grade crossing. It is contended by counsel that, had the bridge not been repaired, wreckage might have fallen to the tracks beneath and thus have obstructed interstate commerce. Such argument entirely ignores the fact that at the time of the accident no necessity for work upon or the removal of wreckage from the tracks had arisen. The bridge was what it had always been, solely a part of the street and highway system of the city of Pittsburgh, entirely separated from all direct participation in or relation to the transportation moving beneath it. The connection with such commerce was at best indirect and remote.

The judgment is accordingly affirmed.

Having sufficiently recovered from injuries theretofore received as above stated, the plaintiff returned to employment with the defendant as an electrician. As such he was ordered to go to Avenmore and to install an electric light on the coal tipple there, to facilitate the coaling at night of engines

that passed over the main line in interstate and intrastate commerce. He complained that he did not wish to do this work, because he had no safety belt and the work was dangerous without one. Accordingly another employee was detailed for the work, but was later relieved. Thereupon plaintiff was again ordered to complete the work, and upon his remonstrance he was told that he had his orders, the work would have to be done, and "if it is not done you know what it will mean." The safety belt was not furnished, for the reason that none was available, and plaintiff started upon the work. He had been so engaged for two days when injured. At the time of injury he was working near the top of the bucket conveyor tower, approximately 70 feet in the air, with his left leg swung over a horizontal brace and his right foot resting on a diagonal brace beneath. In reaching back and up to install a light socket, his right foot slipped, and he was thrown backward, but without falling from the structure. In his twisting fall against the structure he suffered severe injuries, but managed to descend with the aid of his helper.

At the trial a verdict was directed for the defendant both on the ground that plaintiff was not at the time of his injury engaged in interstate commerce, or work so closely related to it as to be practically part of it, and that, even if so engaged, the plaintiff could not recover since the injury was one the risk of which he had assumed. For the purposes of this opinion we may assume, without so deciding, that the work plaintiff was performing was sufficiently identified with and related to interstate commerce as to be practically a part of it.

█ The other and remaining question has to do with assumption of risk. The plaintiff contends that, inasmuch as he made objection and demanded a safety belt, the use of which would have avoided the accident, and proceeded with the work only when in substance threatened with discharge unless he did so, the doctrine of assumption of risk is inapplicable. The only negligence alleged is the failure to furnish the safety belt. There was no defect in tools or appliances. The danger connected with the work was obvious and fully appreciated by the plaintiff. There was no promise to correct the omission, nor were representations of the lack of danger, upon which he might have been justified in relying, made to allay his fears. Knowing the situation, he preferred to take the risk of injury rather than to quit his employment, and this choice was voluntary, albeit collaterally influenced by economic need.

It would be subversive of the entire doctrine of assumption of risk to hold that one who continues in his employment with full knowledge and appreciation of his danger is relieved of the effect of the doctrine because he grumbles or complains, although no assurance of safety is given and no promise of repair is made. It is true that the doctrine is usually stated that, if the employee continues in his employment without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied (or is nonexistent), the employee assumes the risk (Seaboard Air Line v. Horton, 233 U. S. 492, 504, 34 S. Ct. 635 [58 L. Ed. 1062, L. R. A. 1915C, 1]), and some courts have held that it is sufficient to avoid the defense if the employee makes complaint and continues work only upon the command of the master under penalty of discharge (N. Y., N. H. & H. R. Co. v. Vizvari, 210 F. 118 [C. C. A. 2], L. R. A. 1915C, 9; Lehigh Valley R. Co. v. Skoczyla, 278 F. 378 [C. C. A. 3]). These authorities, however, can be supported only upon the assumption that the express direction to continue with the work was an assurance of safety in so doing, or that the risk was not fully known and appreciated by the employee. Here the danger was fully known and appreciated by the employee, and there was no assurance of safety.

█ The doctrine of assumption of risk is ordinarily considered as resting upon the maxim "volenti non fit injuria," or upon the contract of employment. Chicago, B. & Q. R. Co. v. Shalstrom, 195 F. 725, 729 (C. C. A. 8), 45 L. R. A. (N. S.) 387. And either basis of origin would support application of the doctrine in case of dangers fully known and appreciated, whether the employment is continued with or without complaint. Accordingly the fact that complaint was made and remedy refused under threat of discharge has been held insufficient alone to relieve the servant from assumption of risk. Washington Terminal Co. v. Sampson, 53 App. D. C. 179, 289 F. 577; Union Pac. R. Co. v. Marone, 246 F. 916 (C. C. A. 8). Cf. Hogan v. B. & O. R. Co., 15 F.(2d) 739 (C. C. A. 6), in which demand for a proper tool was made, and D., L. & W. R. Co. v. Tomasco, 256 F. 14 (C. C. A. 2), in which demand for a light was made and refused. The case of C., N. O. & T. P. R. Co. v. Thompson, 236 F. 1 (C. C. A. 6), in which Judge Cochran speaking for the court, exhaustively considers the authorities, must be construed as deciding that the danger was not known and appreciated by the employee, for when so known and appreciated this court has con-

sistently held that the risk is assumed. N. Y., C. & St. L. R. Co. v. McDougall, 15 F.(2d) 283 (C. C. A. 6). Compare, also, Pryor, Receiver, v. Williams, 254 U. S. 43, 41 S. Ct. 36, 65 L. Ed. 120.

In conclusion we cannot distinguish the instant case from the ordinary one in which, by continuing his employment with full knowledge and appreciation of the dangers naturally incident thereto, the servant is held to have assumed the risk of injury, even though the master has failed in his duty to supply suitable appliances wherewith to perform the work. Verdict was properly directed upon this ground, and this judgment is also affirmed.