## BAMBERGER ELECTRIC R. CO. v. WINSLOW.

### No. 263.

Circuit Court of Appeals, Tenth Circuit.

Dec. 2, 1930.

A. B. Irvine, of Salt Lake City, Utah (D. A. Skeen and Sam D. Thurman, both of Salt Lake City, Utah, on the brief), for appellant.

Willard Hanson, of Salt Lake City, Utah (A. H. Hougaard, of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

PHILLIPS, Circuit Judge.

Winslow brought this action against the Bamberger Electric Railroad Company under the Federal Employers' Liability Act (45 USCA § 51 et seq.), to recover damages for personal injuries.

The railroad company owns and operates a line of railroad extending from Salt Lake City, to Ogden, Utah. It owns a transfer track at Ogden which connects its line with the line of the Union Pacific Railroad Company, and it is engaged in both inter-

state and intrastate business by means of this connection with the Union Pacific.

The railroad company was engaged in constructing a new transfer track parallel with and adjacent to its old transfer track. In carrying on this new construction, it transported gravel by means of gravel cars to the old transfer track. This gravel was dumped from the sides of such cars next to the new construction and carried to the new grade by means of teams and scrapers. After one side had been dumped, the gravel cars were transported to a wye, reversed and taken back to the old transfer track where the other side was dumped and the gravel in like manner carried to the new construction. Winslow was a member of the section crew. It was the duty of the section crew to remove, with shovels, the gravel that fell between the rails of the old transfer track and to keep such track clear of gravel, so that engines and cars could safely move over and along it. On April 28, 1929, one of such gravel cars became derailed, while on the transfer track. Winslow was engaged, along with other employés, in rerailing such gravel car when he suffered the injuries for which he seeks damages. At the time of the injury, two interstate cars were waiting to be moved over the transfer track.

At the conclusion of the evidence before the trial court, the railroad company moved for a directed verdict upon the ground that Winslow was not engaged in interstate commerce at the time of the injury. The trial court overruled this motion, and the verdict and judgment went in favor of Winslow.

The railroad company has appealed. The sole question presented is whether Winslow was engaged in interstate commerce, at the time of the injury.

In Pedersen v. Del., Lack. & West. R. R., 229 U. S. 146, at page 150, 33 S. Ct. 648, 649, 57 L. Ed. 1125, the court said:

"Considering the terms of the statute, there can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce, and while the employee is employed by the carrier in such commerce."

In Shanks v. Del., Lack. & West. R. R., 239 U. S. 556, at page 558, 36 S. Ct. 188, 189, 60 L. Ed. 436, L. R. A. 1916C, 797, the court said:

" * * * The true test of employment in such commerce in the sense intended is, Was the employee at the time of the injury,

engaged in interstate transportation, or in work, so closely related to it as to be practically a part of it?"

In Erie R. R. Co. v. Welsh, 242 U. S. 303, at page 306, 37 S. Ct. 116, 118, 61 L. Ed. 319, the court said:

"The true test is the nature of the work being done at the time of the injury."

See also Illinois Cent. R. R. Co. v. Behrens, 233 U. S. 473, 478, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163.

Where an employé is engaged in work upon or directly in connection with an instrumentality which is being used in interstate commerce, such employé is employed in interstate commerce. On the other hand, where the instrumentality, upon which the employé is at work or in connection with which he is employed, has not yet been dedicated to use in interstate commerce, although it may be intended for use ultimately in such commerce, such work ordinarily is not so closely related to interstate commerce as to be practically a part of it. See Hallstein v. Penna. R. R. Co. (C. C. A. 6) 30 F.(2d) 594, 595, and cases there collated; and Erie R. R. Co. v. Collins, 253 U. S. 77, 83, 85, 40 S. Ct. 450, 64 L. Ed. 790.

Counsel for the railroad company contend that Winslow was employed in the construction of the new transfer track; that such instrumentality, although ultimately intended for use in interstate commerce, had not yet been dedicated to such commerce, and that the case falls within the latter rule.

On the other hand, counsel for Winslow contend that the old transfer track was an instrumentality being used in interstate commerce and that Winslow, both generally and at the time of the accident, was engaged in keeping that instrumentality clear for use in interstate commerce, and that therefore he was engaged in such commerce when injured.

It has been held that where an interstate track has been blocked by wreckage and interstate transportation thereby interrupted and the work of the employé, at the time of his injury, directly contributes to the clearing of such track for the transportation of interstate cars waiting to be moved thereover, although that may not be the primary object of such work, such employé is engaged in interstate commerce. Southern Ry. Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 705, 61 L. Ed. 1321, Ann. Cas. 1918B, 69; Shaffer v. Western Maryland Ry. Co., 93 W. Va. 300, 116 S. E. 747.

In the case of Southern Railway Co. v.

Puckett, *supra*. Puckett was engaged in inspecting interstate cars. He had inspected about twenty-five cars that had been put into interstate train No. 75, and was waiting to inspect twelve more cars which were to be placed in such train, when a collision between other cars of the Southern Company occurred in a yard near by. Some of such additional twelve cars were to be moved over the track obstructed by such wreck. O'Berry, another Southern Company employé, was caught in such collision and pinned beneath a car. In obedience to the rules of the company, Puckett went immediately to the scene of the wreck to render assistance. He was there instructed by a superior employé to get a "jack" and assist in raising the wrecked car so as to extricate O'Berry and clear the track of the wreckage. While Puckett was carrying some blocks on his shoulder, to be used in jacking up the wrecked car and replacing it upon the track, he stumbled over some large clinkers on the roadway, struck his foot against some old cross-ties overgrown with grass, fell and was seriously injured. The Supreme Court said:

"The court held that although plaintiff's primary object may have been to rescue his fellow employee, his act nevertheless was the first step in clearing the obstruction from the tracks, to the end that the remaining cars for train No. 75 might be hauled over them; that his work facilitated interstate transportation on the railroad, and that consequently he was engaged in interstate commerce when injured.

"We concur in this view. From the facts found, it is plain that the object of clearing the tracks entered inseparably into the purpose of jacking up the car, and gave to the operation the character of interstate commerce."

In the case of Kinzell v. C., M. & St. P. Ry. Co., 250 U. S. 130, 39 S. Ct. 412, 414, 63 L. Ed. 893, the railway company was constructing a dirt fill under a wooden trestle, which fill was intended eventually to support the track. Material for the fill was carried to the point of construction on cars over the existing track and there dumped. The work had progressed to such a stage that when earth was dumped from cars it would pile up beside the track higher than the tops of the ties and rails. In order to clear the rails, and also to widen the embankment, it was necessary to spread such earth by pushing it away from the track toward the edge of the fill. An appliance called a "dozer" was used to spread the earth. Kinzell was engaged in operating such dozer when he suffered injuries due to the negligence of the railway company. The railway company was engaged in interstate commerce and during the progress of the new construction the trestle was being used for interstate commerce. In passing upon the question of whether Kinzell was engaged in interstate commerce, the Supreme Court said:

"It is in evidence in this case, indeed, it is obvious, that the 'dozer' was not called into use until the fill had reached the level of the tops of the ties and had become of such width that the earth when dumped would pile up near the track so as to fall back upon it, if not removed, and that it was used for the double purpose of keeping the rails clear for the interstate commerce passing over them and for pushing the material to the edge of the embankment to widen it. When to this it is added that a part of Kinzell's duty was, with a shovel, to keep the track between the rails clear of earth and stones, which might fall upon it in the progress of the work, clearly it cannot be soundly said that when he was in the act of preparing to make the required use of the 'dozer' he was acting independently of the interstate commerce in which the railway company was engaged, or that the performance of his duties was a matter of indifference to the conduct of that commerce. He was 'employed' in keeping the interstate track, which was in daily use, clear and safe for interstate trains, or, as the superintendent of the railway company stated it, he was engaged with the 'dozer' and shovel in making the track safe for the operation of trains and in avoiding delay to the commerce passing over it. * * * Regardless of what might have been said of the fill before, it had clearly become a part of the interstate railway when the petitioner was injured, for it had reached the stage where it required the work of men and machinery to keep the interstate tracks clear during further construction, and the work of such men was thereafter not only concerned with, it was an intimate and integral part of, the conducting of interstate transportation over the bridge."

■ It is our opinion that the two last cited decisions of the Supreme Court rule the instant case. The manner in which the new construction was being carried on by the railroad company required the work of men and machinery to keep the old transfer track, an instrumentality being used in interstate commerce, clear and free for use in such commerce.

At the time of his injury, Winslow was employed in a dual capacity. His work di-

502

rectly contributed to the new construction not yet being used in interstate commerce. It also contributed to keeping the old transfer track, an instrumentality being used in interstate commerce, clear for such commerce. Rerailing the gravel car enabled the construction work to proceed. It also cleared the old transfer track for use in interstate commerce. Since Winslow was employed in replacing a derailed gravel car on the transfer track, in order to clear that track for interstate commerce, he was engaged in interstate commerce at the time of the injury.

The judgment is therefore affirmed.