## NIEVES et al. v. STANDARD DREDGING CORPORATION.

### No. 4069.

Circuit Court of Appeals, First Circuit.

Dec. 19, 1945.

Benjamin Ortiz and Alvaro Ortiz, both of San Juan, Puerto Rico, for appellants.

J. Henri Brown and Enrique Cordova Diaz, both of San Juan, Puerto Rico, and Roger Siddall, of New York City, for appellee.

Before ALBERT LEE STEPHENS, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

The question before us on this appeal is whether the plaintiffs were "engaged in commerce or in the production of goods for commerce" so as to entitle them to unpaid wages, liquidated damages and a reasonable attorney's fee and costs under §§ 6, 7 and 16 of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. §§ 206, 207, 216. There is no dispute as to the findings of fact made by the lower court.

From 1941 to 1943 the defendant, a subcontractor, carried on dredging operations for a site for a graving dock, entrance channel for same and adjacent waterfront, in Puerca Bay, Puerto Rico, as part of the construction of the United States Naval Base known as Roosevelt Roads. Prior to this dredging work the shores of Puerca Bay were a swampy, almost entirely uninhabited wilderness. The material dredged was deposited ashore by the defendant to make a fill in the naval base. The bay itself had not been used by ships of any kind for the purpose of delivering or receiving merchandise to or from Puerto Rico. The graving dock was an original or new con-

struction which was constructed by the general contractor for the Navy and the dredging operations were the first such operations in this area. The plaintiffs were employed on the dredges, drill boats, general utility launches, and as shore gangs for pipe lines and dikes. They normally slept ashore and had their meals ashore except for lunch on the night shift. Those who were employed in the galley of the dredges consisted of night and day cooks, stewards, mess boys, cook helpers and dishwashers and they had their quarters on the dredges where they slept and took all their meals. Those on each dredge consisted of a mate, second mates, deck hands, deck oilers, engineers and helpers, oilers, handy men, wipers, firemen and galley employees. The mate assisted the leverman and directed and supervised the deckhands who were employed in handling the dredges, making lines fast and letting them go, and doing general work; the second mates had work similar to deckhands; the deck oilers worked on the deck machinery and outside gear; the assistant engineer was engaged below deck operating the engine and supervising the helpers; the oilers assisted the engineers; the handymen at times worked in the engine room as did the wipers; the firemen maintained the fires and kept up the proper head of steam; the stewards took care of stores and supervised the galley generally; the cooks, dishwashers, cooks' helpers and mess boys were concerned with the preparation and serving of the meals; welders and carpenters were also employed on the dredges. Some of the plaintiffs were employed on the drill boats as firemen, oilers, loaders, primers and deckhands. On the launches were a captain and deckhands. Others were shore laborers on the pipe lines.

In answer to the complaint filed by the plaintiffs the defendant asserted that none of them was engaged in commerce or in the production of goods for commerce within the meaning of the Act and that, even if they were, they were seamen within the meaning of § 13(a) (3), 29 U.S.C.A. § 213(a) (3), and therefore exempt from its benefits. The lower court dismissed the complaint holding that the plaintiffs were not engaged in commerce or in the production of goods for commerce but in a new and original construction of a channel and dry dock, neither of which had been in existence prior to this undertaking. It considered it unnecessary to pass on the question as to whether or not any of the

plaintiffs were seamen within the meaning of the exemption. On a motion for rehearing the court ruled that since the plaintiffs were engaged in a new construction the navigability or non-navigability of Puerca Bay and its subsequent use in commerce was immaterial.

On appeal the parties submitted the case on briefs. The plaintiffs urge that the lower court was in error in dismissing the complaint and in denying the motion for rehearing.

■ It is clear that none of the plaintiffs was engaged in the production of goods for commerce. No goods were produced to move in commerce. The dredging operations and work incident to them were not the production of goods as defined in the Act, § 3(i), 29 U.S.C.A. § 203 (i). Nor were any of the plaintiffs engaged in any process or occupation necessary to the production of such goods, § 3 (j). We are concerned here only with the question of whether they were engaged in commerce, § 3(b); whether their activities "are actually in or so closely related to the movement of the commerce as to be a part of it." McLeod v. Threlkeld, 1943, 319 U.S. 491, 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538. In that case the Supreme Court stated at page 495 of 319 U.S. at page 1250 of 63 S.Ct., 87 L.Ed. 1538: "The test of the Federal Employers' Liability Act [45 U.S.C.A. § 51 et seq.] that activities so closely related to interstate transportation as to be in practice and legal relation a part thereof are to be considered in that commerce, is applicable to employments 'in commerce' under the Fair Labor Standards Act." We do not believe that the activities of any of the plaintiffs were "actually in or so closely related to the movement of the commerce as to be a part of it."

In Raymond v. Chicago, Milwaukee & St. Paul R. R. Co., 1917, 243 U.S. 43, 37 S.Ct. 268, 61 L.Ed. 583, the plaintiff brought an action under the Federal Employers Liability Act to recover for personal injuries received by him while working in a tunnel which was being constructed by the defendant to shorten its main line between Chicago and Seattle and to make its service more efficient and expeditious. The tunnel had not been completed and had never been used in interstate commerce. The Supreme Court held that neither the plaintiff nor defendant was engaged in interstate commerce at the

time of the injuries and affirmed the judgment for defendant.

The court in Walling v. Patton-Tulley Transportation Co., 6 Cir., 1943, 134 F.2d 945, 947, held that the purpose of the dike and revetment construction in the Missouri and Mississippi Rivers was to direct and channelize the current to prevent erosion and maintain the minimum depth required by commercial navigation and that employees working on such construction were engaged in commerce and within the coverage of the Fair Labor Standards Act. The argument was made that the employees were engaged in a construction operation rather than in one of maintenance and repair of an interstate facility and the Raymond case was relied upon as an authority for the proposition that "construction of a facility not yet employed in interstate commerce was not engagement in such commerce." But the Court said: "That the Mississippi River has been a highway of interstate commerce since states were first carved out of its contributory territory, and so the reasoning that construction upon a highway not yet utilized for interstate commerce is not work in interstate commerce does not apply."

In the instant case the land was a swampy wilderness and that portion of the bay where the dredging was done could only be used by small row boats. It had never been used in interstate commerce. The work carried on was not repair or maintenance work; its purpose was not to widen or deepen an already existing channel or to remove deposits from an old unused waterpassage which had formerly been used as a highway of commerce. Nothing like dikes or revetments were being installed to affect the flow of the current of an interstate highway. The work upon which the plaintiffs were engaged was not repair or maintenance to an existing dry dock and channel; it was new and original construction in preparing a site for such a dock and a passageway to it, which had not yet been used in interstate commerce. Thus we feel that the Raymond case is controlling and that the plaintiffs were not engaged in commerce within the meaning of the Fair Labor Standards Act.

Repair work on an instrumentality which had previously been used in interstate commerce, but which was removed from such work for repair and later returned to use in interstate commerce was not considered sufficient to warrant a finding that employees engaged in such repair work were engaged in interstate commerce. Industrial Accident Commission v. Davis, 259 U.S. 182, 42 S.Ct. 489, 66 L.Ed. 888; Minneapolis & St. Louis R. R. Co. v. Winters, 242 U.S. 353, 37 S.Ct. 170, 61 L.Ed. 358, Ann.Cas.1918B, 54, and "where the instrumentality, upon which the employé is at work or in connection with which he is employed, has not yet been dedicated to use in interstate commerce, although it may be intended for use ultimately in such commerce, such work ordinarily is not so closely related to interstate commerce as to be practically a part of it." Bamberger Electric R. Co. v. Winslow, 10 Cir., 1930, 45 F.2d 499, 500; Hallstein v. Pennsylvania R. R. Co., 6 Cir., 1929, 30 F.2d 594, 595.

Plaintiffs contend that because their operations were necessary to commerce and navigation that they should be considered an integral part of commerce. We are not here concerned with the outside limits of Congressional power. We are only concerned with the extent to which Congress has exercised its powers. Undoubtedly Congress has power to legislate in respect to waters that may be made navigable but we cannot say that it has done so here. Therefore, it is immaterial that plaintiffs' work was for the purpose of making the waters navigable and that the bay was afterwards used by ships in interstate commerce. The Act cannot be construed to embrace employees whose work merely affects commerce. Overstreet v. North Shore Corp., 318 U.S. 125, 128, 63 S.Ct. 494, 87 L.Ed. 656; Walling v. Jacksonville Paper Co., 317 U.S. 564, 570, 571, 63 S.Ct. 332, 87 L.Ed. 460.

In the view we take of the case it is not necessary to determine whether plaintiffs are seamen within the exemption of § 13 (a) (3) of the Act.

The judgment of the District Court is affirmed.