BALOC et al. v. FOLEY BROS., Inc., et al.

HENNESSY et al. v. COMMONWEALTH ELECTRIC CO.

BECKER et al. v. FOLEY BROS., Inc.

Civil Actions Nos. 917, 955, 964.

District Court, D. Minnesota, Third Division.

Oct. 24, 1946.

534

Walfrid H. Peterson, of Minneapolis, Minn., for plaintiffs.

M. J. Doherty, of Doherty, Rumble, Butler, Sullivan & Mitchell, of St. Paul, Minn., for defendants.

DONOVAN, District Judge.

These three actions were commenced by plaintiffs to recover overtime compensation, liquidated damages and counsel's fees, pursuant to section 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1069, 29 U.S.C.A. § 216(b), hereinafter referred to as the Act. The cases were consolidated for trial. For convenience, the three actions will be referred to as the Baloc case, the Hennessy case, and the Becker case.

It is undisputed that the defendants in the Baloc case, during the period involved herein, were engaged as joint contractors in the construction of the Twin Cities Ordnance Plant, at New Brighton, Minnesota, and the Lake City Ordnance Plant, at Lake City, Missouri. In the construction of said plants much of the building material, machinery and equipment came from points outside the state wherein said construction work was being performed.

In the Hennessy case the situation was the same as described in the preceding paragraph, with the exception that the construction work carried on was limited to the Twin Cities Ordnance Plant, at New Brighton, Minnesota.

The Becker case was commenced by plaintiffs against Foley Bros., Inc. (later, by stipulation, made to include Rohl-Connolly Co. as a joint venturer), and is based on the construction of a highway in the territory of Alaska, commonly referred to as the "Haines Cut-Off Road." During said construction defendant maintained a general office at St. Paul, Minnesota, whereat said plaintiffs were employed.

It is undisputed that all of said defendants were engaged in said construction for and on behalf of the United States on a cost-plus-a-fixed-fee arrangement. In the Baloc and Hennessy cases, it appears from the record that on July 14, 1941, the United States entered into a contract with the Federal Cartridge Corporation (hereinafter referred to as the contractor) for the construction of a small arms ammunition plant, which came to be known as the Twin Cities Ordnance Plant, and with reference to which most of this discussion is concerned, as the Lake City Plant plays but a very small part herein.

The greater part of plaintiffs' testimony is descriptive of the character of the work performed by them during the course of their employment by defendants. With few exceptions, plaintiffs give their occupations as "bookkeeper-clerks" and describe their work as "processing invoices" in what was termed the "invoice audit department," or "comparing the invoices with purchase orders and * * * okaying these invoices for payment." The work performed was in the nature of auditing, keeping what was termed the "invoice register." Others kept a record of used and idle equipment, or were employed in the cost distribution department and "okayed invoices for payment," or handled labor distribution in the cost accounting department. Some plaintiffs were employed balancing ledgers, figuring cost of work to date, and making payroll distributions. Some confirmed bids made with reference to the purchase of equipment, made contact with vendors and did some of the buying, took care of time worked by labor and equipment used, and "reconciled the time against the government payroll." Another described himself as "an instructor, or coordinator, or trouble shooter, or liason man between the main office and the field men." Another was a lawyer, examining rental contracts and seeing that contracts were properly drawn. One testified he was rated "assistant electrical engineer" and "procured the priorities for the company's purchase orders," and at times signed the applications for priorities. He would "call the vendors * * * and jar them up." The wages paid plaintiffs ranged from $40 per week to $85 per week. The foregoing will suffice to furnish the general character of plaintiffs' work.

The evidence in plaintiffs' cases would support the statement that the work performed had to do with business of an intrastate and interstate character that was equal in amount.

Defendants admit noncompliance with the Act. They claim that they were engaged in construction work and that plaintiffs were employed by them in bona fide executive, administrative and professional capacities, as those terms are defined and delimited by the Administrator of the Wage and Hour Division of the United States Department of Labor. Defendants, by appropriate pleadings and evidence, challenge plaintiffs' claims that the Act is applicable in the cases at bar.

The record establishes that all work, labor, service and materials furnished by defendants were subject to inspection and approval by the contracting officer of the United States. Defendants, however, make no claim that they were acting as the agents of the United States.

The actions are based upon the theory that plaintiffs, in the course of their employment, were engaged in interstate commerce within the meaning of the Act, or that their activities were so closely related to interstate commerce as to be in effect a part of it. While plaintiffs make no serious claim that they were engaged in the production of goods for commerce, the record nevertheless invites discussion of that phase of the case. By stipulation the parties agreed upon the extent of plaintiffs' overtime and the amount recoverable for any of such overtime for which the Court might hold the plaintiffs entitled to recover, the amount being computed according to the so-called "Missel" formula established by the decision in the case of Overnight Motor Transportation Co., Inc., v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, and other decisions. The applicability of the formula is clear, since the stipulation shows that the plaintiffs' work weeks fluctuated in respect to the number of hours worked per week with no corresponding fluctuation in agreed compensation.

The following plaintiffs were, on their own motion, dismissed from the case either before or during the trial: George A. Faust, Einer J. Grue, John L. Patterson, Herbert E. Shearen, and Marvin O. Weber.

The questions here presented are:

(1) Were plaintiffs "engaged in commerce or in the production of goods for commerce," within the meaning of the Act?

(2) If so engaged, were plaintiffs nevertheless exempt from the overtime provisions of the Act by reason of their having been employed in bona fide executive, administrative or professional capacities?

It is elementary that plaintiffs cannot recover if, under the facts of the

536

case, they are not "engaged in commerce or in the production of goods for commerce," as provided by sections 6 and 7 of the Act, 52 Stat. 1062, 1063, 29 U.S.C.A. §§ 206, 207. The approach to the "commerce" features of the problem here presented must be based on practical considerations, rather than on decisions dealing with various assertions of state or federal authority in the commerce field, for Congress did not extend to the Act here controlling the full exercise of its commerce power. A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876; Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656. Each case is dependent on its own facts. Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124.

■ The Act is applicable to employees who are engaged in interstate commerce, but not to those whose activities merely affect interstate commerce. The character of the employees' activities during the course of their employment, and not the employer's business, is determinative of the question of whether plaintiffs come within the coverage of the Act. Overstreet v. North Shore Corporation, supra; Walling v. Mutual Wholesale Food & Supply Co. et al., 8 Cir., 141 F.2d 331.

■ Was the character of plaintiffs' work such that in the doing of it they can be termed "engaged in commerce"? It is my opinion that it was not. In reaching this conclusion I entertain no doubt that employees performing clerical work come within coverage of the Act if the facts surrounding their employment warrant. Walling v. Friend, 8 Cir., 156 F.2d 429; West Kentucky Coal Co. v. Walling, 6 Cir., 153 F.2d 582.

The work of plaintiffs is unlike the duties of the rate clerk of an interstate carrier, described in Overnight Motor Transportation Co., Inc. v. Missel, supra, or of employees devoting a substantial part of their time hauling merchandise in interstate commerce, as disclosed in Walling v. Mutual Wholesale Food & Supply Co. et al., supra, at page 340 of 141 F.2d. Plaintiffs' work here is so remote from being "engaged in commerce" as to render the Act inapplicable in that respect. McLeod v. Threlkeld et al., 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538.

■ . Were plaintiffs engaged in the "production of goods for commerce"? The record makes obvious the undisputed fact that defendants were at all times engaged in construction projects. Much of the work being done by defendants was performed prior to the commencement of production by Federal Cartridge Corporation at the plants where many of the plaintiffs were employed. Manifestly, plaintiffs could not be "engaged in the production of goods for commerce" before actual production was commenced. If the defendant employers were not engaged in commerce, it necessarily follows that plaintiff employees could not have been so engaged. Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395; Anderson v. Federal Cartridge Corporation, D.C., 62 F.Supp. 775, affirmed, 8 Cir., 156 F.2d 681.

■ Local construction and clerical work incidental thereto, performed by employees such as the plaintiffs in the present case, are not within the term here under consideration. In Noonan v. Fruce Construction Co., 8 Cir., 140 F.2d 633, at page 635, the Court with seeming approval quotes the Administrator's ruling, applicable here, as follows:

"In its interpretive bulletin No. 5 of October, 1940, page 7, paragraph 12, the Wage and Hour Division expresses the view that 'The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across State lines. Thus, it is our opinion that employees engaged in the original construction of buildings are not generally within the scope of the Act, even if the building when completed will be used to produce goods for commerce.'

"While administrative interpretations of federal acts are not binding on the court, they are entitled to weight. Overnight Motor Transportation Co., Inc. v. Missel, 316.

U,S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345."

See also Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413.

What about the plaintiffs in the Becker case, who were employed in the construction of the "Haines Cut-Off Road"? I cannot see any difference in principle under the Act between construction of a plant in which products will be manufactured for commerce and the construction of a highway over which commerce will pass, on completion. It can be no different, in principle, from construction of new rail lines or bridges or tunnels, which, when completed, will carry commerce, and even such new construction work, as I view it, would not be work performed in interstate commerce, and certainly would not be termed the production of goods for commerce. Noonan v. Fruco Construction Co., supra; Chicago, Burlington & Quincy R. Co. v. Harrington, 241 U.S. 177, 36 S.Ct. 517, 60 L.Ed. 941; New York Central R. Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A.1917D, 1, Ann.Cas. 1917D, 629; Walling v. Snellings, D.C., 53 F.Supp. 851; Bravis v. C. M. & St. P. R. Co., 8 Cir., 217 F. 234; Jackson v. C. M. & St. P. R. Co., D.C., 210 F. 495; Minneapolis & St. Louis R. Co. v. Nash, 242 U.S. 619, 37 S.Ct. 239, 61 L.Ed. 531; Raymond v. C. M. & St. P. R. Co., 243 U.S. 43, 37 S.Ct. 268, 61 L.Ed. 583; Hallstein v. Pennsylvania R. Co., 6 Cir., 30 F.2d 594; Bamberger Electric R. Co. v. Winslow, 10 Cir., 45 F.2d 499; Dollar v. Caddo River Lumber Co., D.C., 43 F. Supp. 822.

In the purchase of materials the defendants took bids in St. Paul, awarded the purchases, and notified the successful bidders of acceptance of their bids, usually by telephone. Formal purchase orders followed. Orders were given to Minnesota vendors, to out-of-state vendors having local representatives acting for them, and to out-of-state vendors having no local representatives. Substantially all orders except for local pick-ups called for delivery by the vendors at the plant site, all transportation charges being paid by the vendors, and provided for passage of title from the vendors directly to the government upon such delivery. It is clear that the defendants did not themselves engage in any interstate transportation. The conclusion is that as to the defendants the purchases were not interstate transactions or commerce within the definition of the Act. Theo. Hamm Brewing Co. v. Young, 76 Minn. 246, 79 N.W. 111, 396; Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944; Blumenstock Brothers v. Curtis Publishing Co., 252 U.S. 436, 40 S.Ct. 385, 64 L.Ed. 649; Banker Brothers Co. v. Pennsylvania, 222 U.S. 210, 32 S.Ct. 38, 56 L.Ed. 168; Wiloil Corporation v. Pennsylvania, 294 U.S. 169, 55 S.Ct. 358, 79 L.Ed. 838; Ware & Leland v. Mobile County, 209 U.S. 405, 28 S.Ct. 526, 52 L.Ed. 855, 14 Ann.Cas. 1031; In re Springfield Realty Co., D.C.Mich. 257 F. 785; Superior Oil Co. v. Mississippi, 280 U.S. 390, 50 S.Ct. 169, 74 L.Ed. 504.

I am of the opinion that plaintiffs were employed in original construction, and the fact that the work performed by them had to do with material or equipment that would be shipped from states other than those in which plaintiffs were employed would not, on the record here made, extend the coverage of the Act to them.

Counsel representing plaintiffs and defendants herein have displayed commendable cooperation in presenting the evidence. Their able arguments and briefs have been helpful to the Court.

In my opinion, plaintiffs have not carried the burden of proving that they were engaged in commerce or in the production of goods for commerce.

The conclusion reached makes unnecessary any discussion of other issues raised.

Defendants may submit findings of fact, conclusions of law and order for judgment consistent with the views herein expressed.

Plaintiffs may have an exception.