**KOEPFLE v. GARAVAGLIA et al.**

No. 9892.

United States District Court
E. D. Michigan, S. D.

June 27, 1951.

George Henry Flynn, Detroit, Mich., for plaintiff.

Clarence A. Reid, Clark, Klein, Brucker & Waples, Detroit, Mich., for defendants.

LEDERLE, Chief Judge.

This case is presently on the Pre-Trial Docket of this court for determination of defendants' motion for summary judgment in their favor.

Plaintiff filed complaint herein on October 24, 1950, claiming that defendants had failed to pay him time and one-half for over time work performed during 1948 and 1949 in accordance with the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. His complaint asked for detailed information from defendants as to wages, hours and work performed by plaintiff and any other past and present employees similarly situated, for injunctive relief on behalf of plaintiff and others similarly situated restraining defendants from failing to pay time and one-half to employees for work in excess of 40 hours per week, and for judgment on behalf of plaintiff and other employees similarly situated for double the amount of unpaid overtime wages found to be due under such Act.

Upon a motion to dismiss being filed, plaintiff filed an amended complaint wherein he alleged that he had been employed by defendants as a watchman on the construction of the Edsel Ford Expressway, Detroit, with incidental duties of operating a gasoline pump and furnishing heat for a building in connection with installation of special equipment. This amended complaint also alleged that the Edsel Ford Expressway is an addition and improvement of United States Highway 112, which is a highway connecting with United States Highway 12 running into Indiana and Illinois, and that such United States Highways are instrumentalities of interstate commerce.

Defendants thereupon filed a motion for summary judgment supported by the affidavit of the Deputy State Highway Commissioner of the State of Michigan and Chief Engineer of the Michigan State Highway Department and the affidavit of one of defendants' supervisory employees.

These were supplemented and supported by maps showing the rights-of-way of the Edsel Ford Expressway and of the intersecting John C. Lodge Expressway. The motion was also supported by ten aerial photographs of the expressways at various stages of development.

At the hearing of the motion for summary judgment, plaintiff conceded that his duties had been connected with both expressways, and that there was no dispute as to the facts. In opposition to the motion plaintiff filed the affidavits of himself, his attorney and an unidentified person stating their conclusion that the Edsel Ford Expressway will constitute an extension of the United States highway system and thus become an instrumentality of interstate commerce. Plaintiff also conceded that he was without authority to ask for relief on behalf of any other employees as he had no written consents to do so.

The following facts appear undisputed:

1. The John C. Lodge and Edsel Ford Expressways are located completely within the boundaries of the City of Detroit, Michigan. They are entirely new and original constructions. Neither of them follows any existing right-of-way, route or trunk line, either federal, state, county or city. There is no repair, maintenance, or reconstruction work being performed on either of said expressways nor does either of said expressways constitute repair, maintenance or reconstruction of any existing highway.

2. The right-of-way for each expressway runs through an area where there has been no existing highway. The work on these projects commenced with the condemnation of land upon which was located homes, factories and other buildings. These proceedings were followed by the actual moving or demolition of buildings within each right-of-way to clear the land for construction of the expressways. The projects constitute in effect a modern version of hewing a trail through the wilderness. The wilderness is comprised of homes, factories and other buildings instead of the traditional trees and brush, and the hewing is being done with cranes, bulldozers, scoop-shovels and other modern machinery instead of the woodman's axe.

3. Actual manual work upon these projects was commenced several years ago, and up to the present time only short stretches of the expressways, totaling a small number of city blocks in all, have been opened to traffic.

4. When completed, the Lodge Expressway is expected to start in the south central business part of the city and to extend northwesterly some 8 miles to the present southeasterly end of Northwestern (James Couzens) Highway. This present southeastern terminus of Northwestern Highway is the western edge of Wyoming Avenue, a city street, at a point some three miles south of the northern city boundary. From there, Northwestern Highway extends northwesterly for about fifteen miles. It ends at the easterly edge of Orchard Lake Road, a state road running north and south through the lake resort country in the county north of Detroit. The Ford Expressway will run east and west across the city about two miles north of the city's southerly boundary, its western terminus being at the easterly edge of Wyoming Avenue, opposite the eastern terminus of the Willow Run Industrial Expressway, which is State Route M–112, and which lies west of Wyoming Avenue. The Ford Expressway will extend easterly to Brush Street, a north and south city street lying two blocks east of Detroit's main street, Woodward Avenue. Among the many streets which these expressways will intersect are some U. S. trunklines.

5. Neither of said expressways is designated as a federal trunk line. Neither expressway is a part of, or an extension of, United States Route 12, United States Route 112 or any other United States Route, or any existing highway.

6. The Lodge Expressway, when completed, will carry traffic from the business district located in the south central part of the city northwesterly to the northerly city limits and into the part of the adjoining county used almost exclusively for residential and resort purposes. The Ford Expressway, when completed, will carry traffic to and from the large industrial enterprises located near the western boundary of the City of Detroit, including the Ford

Rouge Plant, the Kaiser-Frazer Willow Run Plant and the Chrysler-DeSoto Plant, to and from the eastern side of the city where, among others, are located the Chrysler Main Plant, Dodge Plant, Hudson Plant and Packard Plant. Obviously, other vehicles and traffic will not be excluded.

■ Accordingly, it appears that plaintiff and his employers were not engaged in commerce, nor in the production of goods for commerce within the meaning of the Fair Labor Standards Act of 1938, 29 U.S. C.A. § 201 et seq., for the reasons that the work was connected with original construction of entirely new instrumentalities of commerce and the instrumentalities, when completed, are not intended to be interstate facilities but to be local in character. See: Nieves v. Standard Dredging Corp., 1 Cir., 1945, 152 F.2d 719, Crabb v. Welden Bros., 8 Cir., 1947, 164 F.2d 797, Scholl v. McWilliams, 2 Cir., 1948, 169 F.2d 729, and Wage & Hour Manual 10:237 and 10:238, wherein the distinction is drawn between original construction of interstate commerce facilities, which are not within the purview of the Act, and the repair, maintenance or reconstruction of interstate commerce facilities, which are covered.

■ It is possible that, when completed, these expressways, in the same fashion as practically any city street having outlets to other streets, will carry traffic which will ultimately reach a highway which is an instrumentality of interstate commerce. However, such a possibility standing alone would not convert these streets into interstate instrumentalities.

Consequently, it appears from the pleadings, depositions and admissions of the plaintiff that there is no genuine issue as to any material fact and that the defendants are entitled to a summary judgment of no cause of action as a matter of law.

Now, therefore, in accordance with Rule 56, Fed.Rules Civ.Proc. 28 U.S.C.A., it is ordered and adjudged that the plaintiff take nothing from the defendants on the cause of action alleged in this case, and that all of plaintiff's requests for relief are overruled.